# IN THE
# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

JOEL B. ROTHMAN, CRAIG A. WIRTH, and SRIPLAW, P.A.,
Appellants,

v.

A SHOC BEVERAGE, LLC, *et. al.*
Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case No.: 9:21-cv-80740-DMM-WM

## APPELLANTS' CORRECTED[1] INITIAL BRIEF

JOEL B. ROTHMAN
**SRIPLAW, P.A.**
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350
*Pro se and counsel for Craig A. Wirth and SRIPLAW, P.A.*

AVERY A. DIAL
BARBARA R. SCHABERT
**KAUFMAN DOLOWICH & VOLUCK, LLP**
100 SE 3rd Avenue, Suite 1500
Fort Lauderdale, Florida 33394
Telephone: (954) 302-2360
*Counsel for all Appellants*

---

[1] Changed only to correct numbering in the Table of Authorities and minor typographical error.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Appellants, JOEL B. ROTHMAN, CRAIG A. WIRTH, and SRIPLAW, P.A., by and through their undersigned counsel and pursuant to 11th Cir. R. 26.1-1(a) hereby state as follows:

Upon information and belief based on due diligence research performed, the following are believed to have an interest in the outcome of this case or appeal:

A Shoc Beverage, LLC

Celsius Holdings, Inc.

Coffey Burlington, P.L. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

DeSantis, Carl – Shareholder of Celsius Holdings, Inc.

Dial, Avery A. – Counsel for Appellants

Hogan, Howell S. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaplan, Kevin C. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaufman Dolowich & Voluck, LLP – Counsel for Appellants

Keurig Dr. Pepper, Inc.

Kopp, Christopher F. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Milmoe, William H. – Shareholder of Celsius Holdings, Inc.

Rothman, Joel B. – Appellant

Schabert, Barbara R. – Counsel for Appellants

Shing, Li Ka – Shareholder of Celsius Holdings, Inc.

SRIPLAW, P.A. – Appellant

Teitelbaum, Meir – Counsel for Celsius Holdings, Inc.

Wirth, Craig A. – Appellant

*/s/ Avery A. Dial, Esq.*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that oral argument would be helpful to the Court to understand why there was no basis for the district court to impose any sanctions on counsel below, and why the order on appeal's failure to explain why counsel was sanctioned requires reversal.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF AUTHORITIES .................................................................. vii

I.   JURISDICTIONAL STATEMENT .................................................. xii

II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW ..............................1

III. STATEMENT OF THE CASE ......................................................3

   a.  Allegations of the Celsius Complaint Against A Shoc and KDP. .................3

   b.  The District Court's Scheduling Order and the Parties' Scheduling Report. .7

   c.  A Shoc and KDP's Motion to Dismiss.........................................8

   d.  A Shoc's and Celsius' Discovery Disputes ....................................11

   e.  A Shoc Hires Famous Advertising Executive Donny Deutsch and
       Announces Rebranding and New Can Designs for A Shoc. ...............................20

   f.  Celsius was the Subject of an SEC Investigation and this Litigation was a
       Distraction. ................................................................21

   g.  Since A Shoc and KDP Never Answered, Celsius Decided to Dismiss by
       Unilaterally Filing a Notice of Dismissal Pursuant to Fed. R. Civ. P. Rule
       41(a)(1)(A)(i)..............................................................22

   h.  A Shoc's Motion for Sanctions and Fees. .....................................24

   i.  The District Court Hears Oral Argument on the Motion for Sanctions. ........27

   j.  The District Court Awards A Shoc and KDP 100% of their Attorneys' and
       Expert Fees and Enters the Award "against *Plaintiff's counsel.*" .......................28

IV.  STANDARD OF REVIEW.........................................................31

V.   SUMMARY OF THE ARGUMENT ..............................................33

VI.  ARGUMENT....................................................................35

   a.  The Standards Applicable to § 1927 Sanctions.............................35

   b.  The Reasons Why this Court Must Reverse and Vacate/Expunge ...............37

      1.  The Order on Appeal Lacks Findings Concerning the Actions or
          Omissions of Counsel for Celsius....................................................42

      2.  The Order on Appeal Lacks Any Basis to Show that Counsel Acted
          Unreasonably or Vexatiously..........................................................43

      3.  The Order on Appeal Lacks any Basis to Impose Sanctions. ..................44

4.  Nothing in the Record Supports the Conclusion that Counsel Acted in Bad Faith or was Vexatious. ...........................................................45

5.  Nothing Celsius' Counsel Did Multiplied the Proceedings. ...................46

6.  The District Court's Order Lacks any Nexus to Excess Proceedings. .....47

7.  The District Court's Order was Punitive and Violated the Rights of Counsel for Celsius ..........................................................................48

    i.   Celsius' Former Counsel was Deprived of Due Process. .......................48

    ii.  Former Counsel for Celsius were Punished for Exercising their Client's First Amendment Rights...............................................................49

    iii. Sanctioning Counsel for Celsius 100% of the Defendants' Attorneys' Fees and Expert Costs was Grossly Disproportional to any Offence Perceived by the District Court and Can Only Be Explained as Punishment. ...........................................................................50

VII.  CONCLUSION...........................................................................51

# TABLE OF AUTHORITIES

*Cases*

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975) ........................................... 35

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
    457 F.3d 1180 (11th Cir. 2006) ......................... 24, 31, 36, 37, 42, 46

*Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*,
    442 F.3d 1283 (11th Cir. 2006) ......................... 32

*Austin v. United States*,
    509 U.S. 602 (1993) ........................................... 50

*Awad v. Cici Enterprises*,
    2006 U.S. Dist. LEXIS 85123, 2006 WL 4824477 (M.D. Fla. November 20,
    2006)(A) ........................................................... 12

*The Baltimore*,
    8 Wall. 377 (1869) ............................................. 35

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
    12 F.3d 1045 (11th Cir. 1994) ......................... 31, 49

*Bill Johnson's Restaurants, Inc. v. NLRB*,
    461 U.S. 731 (1983) ........................................... 49

*Bivens v. Wrap it Up, Inc.*,
    548 F.3d 1348, 1351 (11th Cir. 2008) ................32

*Bradley v. Fisher*,
    80 U.S. (13 Wall.) 335 (1871) ......................... 49

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ......................... 22

*Carlucci v. Piper Aircraft Corp.*,
    775 F.2d 1440 (11th Cir. 1985) ......................... 48

*Casa Duse, LLC v. Merkin*,
    791 F.3d 247 (2nd Cir. 2015) ......................... 43

*Coleman v. Oasis Outsourcing, Inc.*,

779 F. App'x 649 (11th Cir. 2019) ................................................ 46

*Cordoba v. Dillard's, Inc.*,
  419 F.3d 1169 (11th Cir. 2005) ........................................ 32

*DeVaney v. Cont'l Am. Ins. Co.*,
  989 F.2d 1154 (11th Cir. 1993) ........................................ 31

*Dorey v. Dorey*,
  609 F.2d 1128 (5th Cir.1980) ........................................... 32

*Dreiling v. Peugeot Motors of Am., Inc.*,
  786 F.2d 1159 (10th Cir. 1985) ........................................ 45

*Gowdy v. Mitchell*
  (*In re Ocean Warrior, Inc.*), 835 F.3d 1310 (11th Cir. 2016) .......................... 33

*Gray v. Bostic*,
  613 F.3d 1035 (11th Cir. 2010) ........................................ 32

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
  921 F.3d 1343–62 (11th Cir. 2019) .................................... 15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ......................................................... 33

*Hicks-Washington v. Housing Authority of City of Fort Lauderdale, No.*
  18-61662-CIV-MORENO/SELTZER, 2019 WL 341185 (S.D. Fla. Jan. 28,
  2019) .......................................................................... 46

*In re MGM Mirage Sec. Litig., No. 2:09-CV-1558-GMN*,
  2014 WL 6675732 (D. Nev. Nov. 25, 2014) .................................... 17

*In re Ruffalo*,
  390 U.S. 544 (1968) ......................................................... 48

*International Brominated Solvents Ass'n v. American Conference of Governmental*
*Industrial Hygienists, Inc., No. 5:04-cv-394*
  (HL), 2008 WL 1805445 (M.D. Ga. April 18, 2018) ...................... 46

*Jackson v. Bank of Am., N.A.*,
  898 F.3d 1348 (11th Cir. 2018) .......................................... 3

*JCW Software, LLC v. Embroidme.com, Inc., No. 10-80472-CIV*,
  2011 WL 2149062 at *2 (S.D. Fla. May 31, 2011) .................... 14, 15

*Johnson v. Florida*,
    348 F.3d 1334 (11th Cir. 2003) ........................................................ 32

*Kason Indus., Inc. v. Component Hardware Grp., Inc.*,
    120 F.3d 1199 (11th Cir. 1997) ........................................................ 10

*Malautea v. Suzuki Motor Co., Ltd.*,
    987 F.2d 1536 (11th Cir. 1993) ........................................................ 36

*Nalawagan v. Dang, No. 06-2745-BV*,
    2007 WL 9705983 at *1 (W.D. Tenn. May 30, 2007) ...................................... 14

*Nicholson v. Shafe*,
    558 F.3d 1266 (11th Cir. 2009) ........................................................ 31

*Peer v. Lewis*,
    606 F.3d 1306 (11th Cir. 2010) ........................................................ 47

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010) .................................................................... 33

*Pesaplastic C.A. v. Cincinnati Milacron Co.*,
    799 F.2d 1510 (11th Cir. 1986) ........................................................ 32

*Peterson v. BMI Refractories*,
    124 F.3d 1386 (11th Cir. 1997) ........................................... 36, 37, 42, 48

*POM Wonderful LLC v. Coca-Cola Co.*,
    573 U.S. 102 (2014)(a) ......................................................... 5-6, 6

*Riley v. Hannibal:16-CV-02544-LMM*,
    2018 WL 8665428 (N.D. Ga. Nov. 27, 2018) ............................................. 44

*Roadway Express v. Piper*,
    447 U.S. 752 (1980) ............................................................... 36, 49

*Santini v. Cleveland Clinic*,
    232 F.3d 823 (11th Cir. 2000) ....................................................... xxi, 29

*Schwartz v. Millon Air, Inc.*,
    341 F.3d 1220 (11th Cir. 2003) ....................................................... 37, 44, 45

*Smith v. Grand Bank & Tr.*,
    193 F. App'x 833 (11th Cir. 2006) ...................................................... 32

*Steinert v. Winn Group, Inc.*,
  440 F.3d 1214 (10th Cir. 2006) ........................................................................ 37

*Switch Commc'ns Grp. v. Ballard, No. 2:11-CV-00285-KJD*,
  2011 WL 3957434 (D. Nev. Sept. 7, 2011) ...................................................... 17

*Thomas v. Tenneco Packaging Co., Inc.*,
  293 F.3d 1306 (11th Cir. 2002) ........................................................................ 45

*Trump v. Clinton, No. 22-14102-CV-MIDDLEBROOKS*,
  2023 U.S. Dist. LEXIS 11432 (S.D. Fla. Jan. 19, 2023) .................................. 44

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 ...................................................................................................... 15

*United States v. Bajakajian*,
  524 U.S. 321 (1998) .......................................................................................... 50

*Wynn Las Vegas v. Zoggolis, No.*
  14–cv– 157– MMD–VCF, 2014 WL 2772241 (D. Nev. June 17, 2014) ......... 17

*Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll.*,
  103 F.3d 294 (3rd Cir. 1996) ............................................................................ 45

***Statutes and Rules***

28 U.S.C. § 1291 ........................................................................ 41, 12

28 U.S.C. § 1338 ............................................................................... 12

28 U.S.C. § 1927 ................ 13, 36, 38, 40, 43,46, 47, 48, 49, 54, 55, 56, 57, 58, 59

F.R.A.P. 39 ........................................................................................ 63

Fed. R. Civ. P. 26 ........................................................................ 23, 26

Fed. R. Civ. P. 34 ............................................................................. 23

Fed. R. Civ. P. Rule 41 ................................................................ 34, 35

Rule 11 ............................................................................................. 22

Rule 34 ....................................................................................... 23, 25

Rule 36 ............................................................................................. 26

Rule 37 ............................................................................................. 38

# I.  JURISDICTIONAL STATEMENT

Appellants, Joel B. Rothman, Craig A. Wirth, and the law firm SRIPLAW, P.A. appeal the final decision of the district court entered July 19, 2022 sanctioning counsel for the plaintiff in the case below styled *Celsius Holdings, Inc. v. A Shoc Beverage, LLC and Keurig Dr Pepper, Inc.,* in the Southern District of Florida, Case No. 9:21-cv-80740-DMM-WM, that awarded appellees A Shoc Beverage, LLC and Keurig Dr Pepper, Inc. the amount of $249,357.50 "against *Plaintiff's counsel*."  The federal courts have jurisdiction of this case pursuant to 28 U.S.C. § 1338(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the order on appeal assessed the amount of the sanction and "leaves nothing for the court to do but execute the judgment." *Santini v. Cleveland Clinic,* 232 F.3d 823, 825 n.1 (11th Cir. 2000).

## II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

The district court's order on appeal granted the defendants' motion for sanctions and fees after plaintiff filed a voluntary dismissal while a motion to dismiss the complaint was pending and more than two months of discovery remained. The order determined that "the weakness of Plaintiffs claims, combined with its conduct throughout the discovery process, rise to the level of bad faith, and I will therefore award Defendants their attorneys' fees as a sanction" under § 1927. (DE 66 at 5). The order awards defendants 100% of their request for attorneys' fees and expert fees. (DE 66 at 8-10). The order mentions nothing about counsel for Celsius and speaks in terms of "plaintiff's" actions throughout, not those of plaintiff's counsel. Yet, its conclusion recites that "Defendants are **AWARDED** their reasonable attorneys' and experts' fees in the amount of **$249,357.50.** This amount is entered against *Plaintiff's counsel*." (DE 66 at 10)(emphasis in italics added, emphasis in bold in original).

The district court's order must be vacated and the sanction award against counsel expunged because 1) the district court failed to apply the proper legal standard or to follow proper procedures; 2) the district court's award was one-sided, unsupported by facts, and failed to view the facts in the light most favorable to Celsius and its counsel; 3) the district court's conclusion that discovery abuse

occurred was clearly erroneous because no discovery motions were ever decided; 4) the district court's order lacks the necessary concise and clear explanation of its reasons, and in fact contains no reasons at all to sanction counsel; 5) the order contains no findings of bad faith or vexatious conduct by counsel, or any evidence of multiplying proceedings; 6) awarding defendants one hundred percent of their attorneys' fees and expert fees incurred for defense of the case without apportioning out the amount unrelated to any alleged excess proceedings was clearly erroneous, and no legal basis for awarding expert fees exists; and 7) the district court denied Celsius' former counsel their rights to due process, squelched their First Amendment rights, and imposed a baseless punitive fine against counsel in violation of the Eighth Amendment.

### III.   STATEMENT OF THE CASE

The Appellants, Joel B. Rothman, Craig A. Wirth are former counsel for Celsius Holdings, Inc. in the case below styled *Celsius Holdings, Inc. v. A Shoc Beverage, LLC and Keurig Dr Pepper, Inc.,* filed in the Southern District of Florida, Case No. 9:21-cv-80740-DMM-WM ("Celsius/A SHOC Case"). SRIPLAW, P.A. is appellants' law firm based in Boca Raton, Florida. Rothman, Wirth and SRIPLAW are referred to herein as "former counsel for Celsius."

**a. Allegations of the Celsius Complaint Against A Shoc and KDP.**

On April 20, 2021, Boca Raton, Florida beverage company Celsius filed the case below against A Shoc and KDP. Celsius and A Shoc are competitors in the energy drink business. Celsius markets Celsius® brand ready-to-drink liquid dietary supplement products in a variety of flavors under the registered trademark CELSIUS®. Celsius' complaint alleged Lanham Act claims against A Shoc and its distributor KDP for trade dress infringement, false advertising and related state law claims.[2] (DE 1).

---

[2] Sanctions are frequently imposed based on the filing of shotgun pleadings. *See e.g. Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (describing the amended complaint as "an incomprehensible shotgun pleading" and affirming the imposition of sanctions). No one, not the defendants nor the district court, ever accused Celsius or its counsel of filing a shotgun pleading. The complaint was clear, concise, and set forth claims that were obviously not frivolous.

Celsius' claims related to two aspects of the packaging for A Shoc. One aspect concerned the design of the A Shoc can that Celsius alleged infringed on its trade dress for the Celsius can. Celsius alleged that since 2017, several years prior to the introduction of A Shoc, Celsius used a distinctive can design. Celsius described its trade dress visually in the complaint as compared with A Shoc's can design. (DE 1 at 11). Celsius also described its trade dress in words as consisting of the following elements:

• A "NO SUGAR" callout below the rim of the top of the can;

• Top placement of the letter "C" logo in uppercase font, with a sloping line crossing through the outline of the letter and separating the top third of the character from the bottom two-thirds, where the top third shows a gradient blend of color shaded to match the color of the Celsius flavor in the can and to match the colors on the front of the can illustrating the flavor. The typographical symbol for degree of temperature is present to the upper left corner of the uppercase "C", creating a Celsius temperature indicator. The wording "CELSIUS" in black in stylized form is below the design element of the "C" logo.

• The flavor is indicated on the label below the "C" logo design element;

• A racetrack shaped benefit icon at the bottom of the can that reads "0 SUGAR";

• A benefit footer bar banded in black containing three callouts concerning the product;

• Top placement of the CELSIUS logo in the top area of the can;

• Racetrack shaped benefit icons positioned below the logo;

• Horizonal lines separating each section of the side label colored to match the flavor color;

• Main copy text in the center of the side label positioned below the benefit icons;

• Colored and dark banding wrapped around the bottom of the can.

(DE 1 at 11-13).

The other aspect of the labeling for A Shoc that aggrieved Celsius was the marketing of A Shoc's product as a conventional beverage while making dietary supplement structure/function claims that the product "ACCELERATES METABOLISM," provides "PLANT BASED THERMOGENICS," and similar claims for the calorie burning and metabolism increasing properties of the product. (DE 1 at 8-9). Celsius alleged in the complaint that these were unsupported dietary supplement structure-function claims that were prohibited by the Food, Drug and Cosmetics Act (FDCA) as amended by the Dietary Supplement Health and Education Act (DSHEA), and could not be made for A Shoc without substantiation by scientific evidence and clinical trials on the A Shoc product. (DE 1 at 9).

In the absence of substantiation, Celsius alleged that the claims for A Shoc were false, misleading, unfair, and unsupported. (DE 1 at 8-9). Celsius also alleged that A Shoc's false claims made its product misbranded under the FDCA, and violated the Lanham Act's prohibition against making unfair or misleading claims in advertising. See *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014)

(approving of a competitor's claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for making false or misleading claims in advertising).

The claims made by A Shoc were particularly unfair to Celsius because A Shoc had no research to support its claims, but Celsius did have such research for its formula. Celsius invested in six clinical trials of the Celsius formula conducted by respected university research groups costing Celsius millions of dollars to support the claims made for products containing Celsius' MetaPlus formula. (DE 1 at 4-8). A Shoc's similar claims to Celsius' lacked scientific support and were not based on A Shoc's formula that is different from Celsius' formula. (Id.)

Based on the factual allegations in the Complaint, Celsius asserted nine counts against A Shoc and its distributor KDP. Count I alleged violations of Section 43(a) of the Lanham Act based on A Shoc's false and misleading labeling statements (DE 1 at 18-20); Count II alleged trade dress infringement (DE 1 at 20-21); Count III alleged violations of California's Unfair Competition Code based on A Shoc's false and misleading labeling statements (DE 1 at 21-23); Count IV alleged violations of California's Unfair Competition Code based on A Shoc's trade dress infringement (DE 1 at 23-25); Count V (misnumbered as VII) alleged violations of California's Fraudulent Business Practices statute based on A Shoc's false and misleading labeling statements (DE 1 at 25-26); Count VI (misnumbered as XI) alleged violations of the Florida Unfair and Deceptive Trade Practices

statute based on trade dress infringement (DE 1 at 28-29); Count VII misnumbered as VIII) alleged common law unfair competition under California law (DE 1 at 29); and Count VIII (misnumbered X) alleged common law unfair competition under Florida law (DE 1 at 30).

### b. The District Court's Scheduling Order and the Parties' Scheduling Report.

Shortly after the complaint was filed, on May 11, 2021, the district court issued its pretrial scheduling order setting trial for January 18, 2022, nine months from the date of filing. (DE 20). The district court refers to this as its "rocket docket."[3]

In compliance with the district court's pretrial scheduling order, the parties met and prepared a joint scheduling report. (DE 26). The parties each set forth their positions on the scope of discovery. Celsius maintained that the scope should be limited to "a) Defendants' labeling of A SHOC Accelerator products; b)

---

[3] The district court explained the purpose for using a "rocket docket" as follows:

> Most agree that early and firm trial dates contribute to speedy, less costly, and more efficient resolution. I use a so-called "rocket docket" to reduce costs with less time for abusive discovery. But it is a blunt instrument. A better way is for lawyers, early in a case, to map out a plan proportionate to the issues and amount in controversy.

Honorable Donald M. Middlebrooks, "The Independence of the American Lawyer," Thirteenth Annual Chester Bedell Memorial Lecture (June 26, 2015) at 4 (https://floridatls.org/wp-content/uploads/2019/11/2015-Hon.-Donald-M.-Middlebrooks.pdf).

Defendants' claims for A SHOC Accelerator products; and c) Celsius' damages."
A Shoc and KDP said the scope should "a) Plaintiff's asserted trade dress; b) The
basis for Plaintiff's claim that Defendants' marketing is false; c) Any evidence of
likelihood of confusion; d) Any evidence of harm to Plaintiff that was allegedly
caused by Defendants; [and] e) Defendants' affirmative defenses." (DE 26 at 2).

### c. A Shoc and KDP's Motion to Dismiss

On May 28, 2021, A Shoc and KDP filed their motion to dismiss the
complaint. (DE 27). The motion argued that the complaint failed to state claims for
trade dress infringement or false advertising under the Lanham Act and the state
statutes and common law. The motion also argued that KDP was not liable as the
distributor of A Shoc.

The motion attached an attorney's declaration that sought to introduce
evidence outside the four corners of the complaint, specifically a) a publication of
the American Beverage Association entitled *ABA Guidance for the Responsible
Labeling and Marketing of Energy Drinks* (April 30, 2014); and b) photographs of
other unrelated energy drink cans of Red Bull Zero, Sparkling Caffeine Ice,
Monster Energy Zero Ultra, and Monster Energy Ultra Sunrise. (DE 28). The
declaration also attached several of the studies for Celsius referenced in the
Complaint. (Id.)

In their motion, A Shoc used the reference to the *ABA Guidance* document to argue that A Shoc's product conformed to the Association's guidance for beverage labeling, while Celsius did not. (DE 27 at 18). A Shoc used the photographs of the unrelated energy drink cans to argue that other energy drinks use features on their labels similar to the ones on the labels for Celsius and A Shoc. (DE 27 at 3, 12). And A Shoc used Celsius' studies to argue that those studies supported A Shoc's labeling claims because one of the ingredients in the Celsius formula that was studied was caffeine and A Shoc's product contains caffeine. (DE 27 at 17).

Celsius opposed the motion. (DE 32). Celsius argued that its complaint was detailed and more than sufficient to allege trade dress infringement and false advertising in violation of the Lanham Act, the state statutes, and the common law. As to the trade dress claim, Celsius argued that the complaint plausibly and sufficiently alleged that the total image and overall appearance of the Celsius product package was distinctive, and that A Shoc's product was confusingly similar to Celsius' trade dress. (DE 32 at 8-11).

On the false advertising and labeling claim, Celsius argued that A Shoc's unsupported structure function claims for its conventional food product violated the FDCA and constituted misleading advertising. (DE 32 at 11-16). Celsius argued that the fact that A Shoc contained caffeine did not *ipso facto* make its

claims for a different formula truthful; advertising claims such as the ones made by A Shoc must be supported by competent and reliable scientific evidence, but A Shoc's claims were not. (Id.) Celsius argued that the issues raised by A Shoc concerning compliance with the *ABA Guidance* document, the similar features on other energy drink labels, and the ingredient caffeine were fact issues not appropriate for a motion to dismiss. (DE 32 at 16-18). Celsius also argued that distributors of products are liable under the Lanham Act with the companies whose products they distribute on the authority of *Kason Indus., Inc. v. Component Hardware Grp., Inc.,* 120 F.3d 1199, 1201 (11th Cir. 1997) (reversing summary judgment for Lanham Act violations against equipment company and its distributor, Peachtree Distributing, Inc., despite the fact that "Peachtree's liability rests solely upon CHG's liability."). (DE 32 at 18-19).

A Shoc replied and repeated the same arguments they made in the motion. (DE 33). By June 18, 2021, the motion was fully briefed and submitted. However, no decision was ever rendered.

Notably, A Shoc and KDP *never served Celsius or Celsius' counsel with a Rule 11 motion.* Apparently, the defendants did not believe that Celsius' complaint rose to the level of a baseless filing.

### d. A Shoc's and Celsius' Discovery Disputes

After the scheduling order was entered on May 11, 2022, discovery moved forward on the order's accelerated schedule. Both sides served paper discovery requests on the other.[4] In mid-June, A Shoc served eighty-seven (87) requests for production. (DE 34-1). A Shoc served one hundred and eighty-three (183) requests for admission. (DE 35-1). A Shoc served twelve interrogatories. (DE 35-2).

After a brief agreed extension, in early August Celsius responded to the requests for production (DE 34-2), requests for admission (DE 35-3) and interrogatories. (DE 35-4).

Celsius objected to many of the requests for production because they failed to "describe with reasonable particularity each item or category of items to be inspected" pursuant to Fed. R. Civ. P. 34(b)(1)(A).[5] Celsius quoted the specific

---

[4] Because Celsius never moved to compel A Shoc, Celsius' discovery requests are not in the record, but Celsius did serve forty eight requests for production on A Shoc on May 20, 2021. A Shoc served responses and objections timely, but refused to produce documents and ESI without a protective order. That protective order was the subject of negotiation and finally agreed to and submitted on September 1, 2021. (DE 41). Celsius voluntarily dismissed two weeks later. (DE 50).

[5] See, e.g., Celsius' objection to A Shoc's request for production numbered four (4) which asked for production of "All documents concerning all rights claimed by Celsius in Celsius's alleged trade dress." (DE 34-2 at 4). Celsius responded as follows:

> Celsius objects because "all documents concerning all rights claimed by Celsius" is overly broad, vague, and ambiguous in failing to describe with requisite particularity the items sought to be produced. Rule 34 requires requests for production to "describe with reasonable

particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A); see *Awad v. Cici Enterprises*, 2006 U.S. Dist. LEXIS 85123, 2006 WL 4824477, *1 n. 1 (M.D. Fla. November 20, 2006) ("A request for 'all documents and records' that relate to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for Plaintiff's identification and production of responsive documents." *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-FtM-29SPC, 2011 U.S. Dist. LEXIS 28376, at *6 (M.D. Fla. Mar. 8, 2011); *K'napp v. Adams,* No. 1:06—cv—01701—LJO—GSA—PC, 2014 U.S. Dist. LEXIS 31535, 2014 WL 950353, at *6 (E.D. Cal. Mar. 11, 2014) (denying request for production of "all documents related to Defendants' affirmative defenses" for failure to comply with Rule 34's particularity requirements). "The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required." *U.S. v. Nat'l Steel Corp.*, 26 F.R.D. 607, 610 (S.D. Tex. 1960). The portion of the request quoted above fails to comply with the particularity standard in Fed. R. Civ. P 34(b)(1)(A) and requires Celsius to comb through all documents within its custody and control and make a subjective judgment as to the evidentiary or impact of each and every document in order to respond. This is beyond the capability of a man of ordinary intelligence and, as a result, Celsius is unable to respond.

The request is also overly broad and not relevant to the extent it seeks documents and things with no time frame. The request is also not relevant to the extent it seeks documents and things that have no bearing on the claims in this case concerning Celsius' trade dress or the unsupported structure-function claims for the A SHOC Accelerator product.

Celsius also objects because all rights claimed by Celsius "trade secret or other confidential research, development, or commercial information" subject to Fed. R. Civ. P. 26(c)(1)(G).

This request calls for documents and things that are protected by the attorney-client privilege, work product doctrine, and/or any other privilege, immunity, or protection afforded by law inasmuch as all such documents that are responsive to this request that predate the filing of this action are privileged.

language from the request that made it overly broad, vague and ambiguous, and cited relevant case law from Florida district courts that held that similar requests failed to comply with the "reasonable particularity" requirement of Rule 34.

Celsius objected to requests for admission one through one hundred sixty-three (163) that asked Celsius to admit that certain images of energy drink cans contained features that were also contained on the labels of Celsius and A Shoc. (DE 35-3). Like the photographs of the unrelated energy drink cans that A Shoc submitted in support of its motion to dismiss, it appeared that A Shoc intended to use Celsius' answers to the requests for admission to argue that Celsius' trade dress was not distinctive because other energy drinks used similar features on their labels.

Celsius objected to the requests for admission because the requests were being used as a discovery device, instead of to authenticate documents or eliminating issues for trial, and Celsius cited case law in support of that

---

(DE 34-2 at 3-4).

proposition.[6] Celsius also objected based on relevancy.[7] Celsius objected because many of the requests asked questions that were improperly directed to Celsius, as opposed to a reasonable consumer; the likelihood of confusion standard for trademark and trade dress asks whether a reasonable consumer would be confused

---

[6] Request for admission number two (2) purported to show a can of an energy drink sold under the brand "Rowdy Energy" and asked "Admit that, to the best of your knowledge, the following image accurately depicts a can of Rowdy Energy as it currently appears in the marketplace." (DE 35-3 at 2-3). Celsius objected based on the use of requests for admission as a general discovery device:

> Celsius objects to this request because Defendants' Request for Admissions are being used as a discovery device. Rule 36 requests for admission are not meant to be a discovery device. See *JCW Software, LLC v. Embroidme.com, Inc.*, No. 10-80472-CIV, 2011 WL 2149062 at *2 (S.D. Fla. May 31, 2011) (Rosenbaum, M.J.). Instead, requests for admissions are meant for the purpose of authenticating documents and eliminating issues "because it is assumed the requesting party already knows the facts or has the documents that it is seeking to authenticate." See *Nalawagan v. Dang*, No. 06-2745-BV, 2007 WL 9705983 at *1 (W.D. Tenn. May 30, 2007) (citing *Misco, Inc. v. U.S. Steel Corp.,* 784 F.2d 198 (6th Cir. 1986)).

[7] Celsius' objection to request for admission two (2) stated:

> Celsius also objects to the request because it is not relevant to any claim or defense in this matter. Fed. R. Civ. P. 26(b) permits "discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Admitting what Rowdy Energy Drink's can looks like in the marketplace is irrelevant to any claim or defense in this matter because this is not an action between Rowdy and Celsius, and it will not reasonably lead to other matters that could be on, any issues that is or may be in the case. See Fed. R. Civ. P. 26(b)(1). This is a trade dress and false advertising case and whether Celsius competes with another company or is aware of what another company produces has no bearing on the issues raised in this matter.

(35-3 at 3).

and not whether Celsius as a plaintiff would be confused.[8] Celsius also objected

based on the fact that the sheer number of requests for admission was improper.[9]

Celsius objected to the interrogatories because most were written in an

argumentative fashion that mischaracterized Celsius' claims.[10] Celsius also

---

[8] Celsius' objection on this ground to request for admission two (2) stated:

> Celsius further objects because Trade Dress infringement is based upon the "reasonable consumer" standard, i.e., whether the reasonable consumer believes that the trade dress of A SHOC is confusingly similar to that of Celsius. See *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1361–62 (11th Cir. 2019) ("The point of the similarity-of-mark analysis 'is that the closer the marks are, the more likely reasonable consumers will mistake the source of the product that each mark represents.'"). Celsius' belief or knowledge of other unrelated products is not relevant to this matter. Additionally, it is not proper to break down trade dress into individual elements as trade dress is the total look and feel of a product's packaging. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764; fn. 1 (1992) "[Trade dress] 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or event particular sales techniques.'" *Id.* (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (CA11 1983)).

(35-3 at 3-4).

[9] Celsius' objection on this ground to request for admission two (2) stated:

> Lastly, Celsius objects to the voluminous requests for admission. Other methods of discovery would have been less extensive and burdensome than answering one hundred and eighty-four requests. *See JCW Software, LLC*, 2011 WL 2149062, at *2 (S.D. Fla. May 31, 2011) (other methods of discovery should be used before serving voluminous requests for admission).

(DE 35-3 at 4).

[10] For example, interrogatory nine (9) asked "Describe in detail the factual basis for and identify all evidence that supports the proposition that the A SHOC ACCELERATOR product does not "ACCELERATE METABOLISM." (DE 35-4

objected because the interrogatories were phrased in an objectionable manner to require Celsius "describe in detail the factual basis for and identified all evidence that supports" a particular allegation in the complaint. Such broad questions have been held to be oppressive and unduly burdensome, and Celsius could not

---

at 9). That question misrepresents and misstates the allegations of the complaint. The complaint alleged that A Shoc and KDP "lack a reasonable basis" and "lack competent and reliable scientific evidence to support the claims…that the product 'ACCELERATES METABOLISM" or is 'THERMOGENIC,'" that the claims "violate the FDCA and render the product misbranded under the FDCA," and that as a result the claims are unfairly competitive and violate the Lanham Act. (DE 1 at 10, 20-21). The complaint never claimed that human consumption of the A Shoc product does not have an effect on metabolism. It might, it might not; without scientific evidence to support the claim and provide a reasonable basis to make it, making that claim was the problem. So Celsius objected as follows:

> Celsius objects because Defendants mischaracterize Celsius's allegation made in the Complaint. The allegation in the Complaint is that "A SHOC and KDP lack any reasonable basis to make the claims for A SHOC ACCELERATOR that the product "ACCELERATES METABOLSIM" or is "THERMOGENIC" and that "A SHOC and KDP lack competent and reliable scientific evidence to support the claims for A SHOC ACCELERATOR that the product "ACCELERATES METABOLISM" or is "THERMOGENIC." (Complaint ¶¶ 32-33). The factual predicate for this question is therefore inconsistent with and different from the allegations in the Complaint. The question is not relevant because Celsius has not alleged that A SHOC ACCELERATOR product does not "ACCELERATE METABOLISM" but rather A SHOC and KDP lack substantiation to support its claim.

(DE 35-4 at 9-10).

determine how to provide answers without being subjected to the burden imposed by A Shoc.[11]

After Celsius served its responses and objections to A Shoc's discovery, and A Shoc served its responses and objections to Celsius' (more modest) requests, the parties began to meet and confer by telephone and remote video conference in an effort to resolve their respective objections and avoid burdening the court with discovery disputes. Discovery cut-off was three months away–November 1, 2021– so there was ample time to negotiate revised requests and obtain responses. A Shoc did not see it that way.

---

[11] Celsius objected to interrogatory nine (9) quoted above as follows:

> The interrogatory is also facially oppressive and unduly burdensome in seeking to require a detailed listing or description of facts in support of contentions. A request seeking "all facts" and "all information related to each and every allegation" is facially burdensome. *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-1558-GMN, 2014 WL 6675732, at *5 (D. Nev. Nov. 25, 2014); *Wynn Las Vegas v. Zoggolis*, No. 14–cv– 157– MMD–VCF, 2014 WL 2772241, at *3 (D. Nev. June 17, 2014); *Switch Commc'ns Grp. v. Ballard,* No. 2:11-CV-00285-KJD, 2011 WL 3957434, at *8 (D. Nev. Sept. 7, 2011) (quoting *Steil v. Humana Kansas City, Inc.,* 1197 F.R.D. 445, 447 (D. Kan. 2000) "*Steal* [SIC] states that an interrogatory may reasonably ask for the material or principal facts which support a party's contentions. However, 'to require specifically 'each and every' fact and application of law to fact … would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details.'").

Celsius faced other pressures, including an expert disclosure deadline on August 9, 2021. Celsius met that deadline[12] and disclosed its two experts and their reports on that date. Celsius disclosed Christopher Lockwood, Ph.D., Celsius' expert on dietary supplement claims (DE 39-7 (Lockwood CV) and 39-8 (Lockwood Report)), and Ralph Blessing and Marketlab, Celsius' market research experts (DE 39-3 (Blessing CV), 39-4 (Marketlab/Blessing Project Overview), 39-5 (Marketlab Statement of Work (SOW) for Survey), and 39-6 (Marketlab Capabilities).

After receiving Celsius' expert disclosures, A Shoc did not request depositions of Celsius' experts, nor did they request any supplementation of the expert reports. Instead, on August 11, 2021, counsel sent an email demanding to know "whether Celsius will force us to formally move the court to exclude Mr. Lockwood and Mr. Blessing's testimony." (DE 39-9). Celsius suggested that A Shoc take Celsius' experts' depositions first before moving to strike. A Shoc demurred.

---

[12] Celsius requested from opposing counsel, but never moved for, an extension of the expert deadlines set by the district court's scheduling order. Celsius' expert disclosures were served timely on August 9, 2021. Yet A Shoc peppered the record below with irrelevant correspondence including Celsius' request for an extension of the expert deadlines (DE 39-1), and A Shoc's refusal (DE 39-2), in an apparent effort to claim Celsius was dragging its feet in discovery. But Celsius met all discovery deadlines.

At the end of August 2021, A Shoc filed *two* twenty-page motions to compel, one directed to Celsius' objections to requests for production (DE 34), and another directed at Celsius' objections to 162 requests for admission and interrogatories. (DE 35). A Shoc also filed a nineteen-page motion to strike Celsius' experts three months prior to the district court's *Daubert* motion deadline. (DE 39).

All three motions were referred by the district court to the magistrate judge. (DE 36, 46). The magistrate judge set an expedited briefing schedule on the motions to compel and scheduled an in-person hearing for September 20, 2021. (DE 37). The magistrate judge also issued an order on discovery procedure limiting discovery motions and oppositions to five pages and requiring the parties to "continue to pursue settlement of any disputed discovery matters even after the hearing is scheduled." (DE 38).

A Shoc's motions did not comply with the five-page limit, yet A Shoc did not refile them. Celsius defended its objections to A Shoc's 162 requests for admission and 12 interrogatories in an opposition to the motion filed in compliance with the five-page limit.[13] (DE 43). Celsius also filed a compliant five-page

---

[13] Celsius did not respond to the motion to compel A Shoc's eighty-seven requests for production. Celsius' objections were amply supported by case law and explained in detail such that the magistrate judge could rule on them without additional briefing.

opposition to the motion to strike Celsius' experts. (DE 47). A Shoc filed replies to both motions.[14] (DE 45, 49).

### e. A Shoc Hires Famous Advertising Executive Donny Deutsch and Announces Rebranding and New Can Designs for A Shoc.

Other things happened in August of 2021. It was that month that Deutsch LA, the creative agency named for famous ad man Donny Deutsch[15], announced that "Energy Drink A SHOC" just became a new client of the agency and was

---

[14] A Shoc's reply to the motion to compel attached new material consisting of three different self-serving letters sent by counsel for A Shoc to Celsius' counsel in an apparent attempt to paint Celsius' counsel as obstructionist. (DE 45-1, 45-2, 45-3). All three letters raised and argued the same issues A Shoc raised in its motions to dismiss and compel that Celsius previously rebutted and disagreed with in its oppositions. A Shoc apparently tried to demonstrate by attaching its counsel's correspondence that it had the better argument why the discovery it sought was relevant. However, all the correspondence proved was that Celsius and A Shoc had a genuine discovery dispute over who was right about whether A Shoc was entitled to answers to its requests and interrogatories.

[15] About Donny Deutsch:

> Donny Deutsch is a TV personality and Chairman Emeritus of Deutsch Inc. one of the world's leading advertising agencies. He was previously the host of the CNBC talk show "The Big Idea with Donny Deutsch" and is currently a regular on MSNBC's "Morning Joe." Deutsch has penned two business motivation books, "Often Wrong, Never in Doubt" and "THE BIG IDEA: How to Make Your Entrepreneurial Dreams Come True from the AHA Moment to Your First Million." His highly anticipated scripted comedic series, donny!, is set to premiere on USA Network fall 2015. He is a graduate of the Wharton School at the University of Pennsylvania and serves on the Board of Directors for the Michael J. Fox Foundation for Parkinson's Research.

See https://donnydeutsch.com/ (visited January 28, 2023).

releasing a new ad campaign, new can design, and new brand identity. (DE 57-1).

In other words, the old A SHOC cans with the alleged infringing trade dress and

alleged misleading and unfairly competitive label claims that Celsius complained

about in its complaint would soon be a thing of the past. As a result, at the same

time that Celsius became mired in discovery disputes with its competitor, Celsius

also learned that the parties' dispute over can design and label claims would soon

be mooted by its competitor's new can design and brand identity.

### f. Celsius was the Subject of an SEC Investigation and this Litigation was a Distraction.

Unbeknownst to A Shoc and the district court, other pressures unrelated to

this litigation consumed Celsius and its executive management in August of 2021.

Specifically, an informal investigation by the Division of Enforcement of the

Securities and Exchange Commission that began in January of that year escalated

to a more serious stage when on August 20, 2021 the SEC issued a subpoena to

Celsius. Celsius disclosed the investigation for the first time in its September 30,

2021 Form 10-Q Quarterly Report.[16] Celsius' disclosure said:

---

[16] Celsius' SEC filings are not in the record, but Celsius' former counsel requests this court take judicial notice of the SEC investigation disclosure in Celsius' September 30, 2021 Form 10-Q. Taking judicial notice of SEC documents has been upheld when "relevant to determine what statements or disclosures are actually contained therein, [since] there can be little question as to authenticity, nor can the fact that such statements or disclosures were thus publicly filed be reasonably questioned. SEC filings are generally recognized as the most accurate

On January 8, 2021, we received a letter from the SEC Division of Enforcement seeking the production of documents in connection with a non-public fact-finding inquiry by the SEC to determine whether violations of the federal securities laws have occurred. On August 20, 2021, the SEC issued a subpoena for production of documents in connection with the matter. Neither the January 8, 2021 SEC letter nor the August 20, 2021 subpoena means that the SEC has concluded that the Company or anyone else has violated the federal securities laws. We have cooperated and will continue to cooperate with the SEC staff in its investigation. At this time, however, we cannot predict the length, scope, or results of the investigation or the impact, if any, of the investigation on our results of operations.

(Celsius Form 10-Q dated September 30, 2021 at 23).

**g. Since A Shoc and KDP Never Answered, Celsius Decided to Dismiss by Unilaterally Filing a Notice of Dismissal Pursuant to Fed. R. Civ. P. Rule 41(a)(1)(A)(i).**

By early September of 2021, Celsius determined that its best course of action under the circumstances was to dismiss its complaint. Celsius arrived at this decision principally because it had obtained the relief it sought in the first place–getting A Shoc to change its can design and labeling–voluntarily and without a court order. When Celsius learned A Shoc hired Deutsch LA to rebrand, redesign its cans, and reposition itself in the marketplace, Celsius knew it had won and the A Shoc cans would soon change. Soon Celsius' claims asserted against A Shoc's old cans would be moot. If in the future Celsius had issues with A Shoc's new cans and labeling then Celsius could decide then whether to initiate litigation at that

---

and authoritative source of public information about a company." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)

time. Celsius knew that its case was all about injunctive relief and proving damages would be a daunting task,[17] so it decided to cut its litigation expenses and accept its victory in the marketplace.

Celsius' decision made sense since it was consumed with more important matters, specifically the ongoing investigation by the Enforcement Division of the SEC. Celsius' management had no bandwidth to spare for the A Shoc case. Nor was it deserving of attention in view of A Shoc's announcement that it was rebranding and changing its cans.

Celsius filed its notice of dismissal pursuant to Fed. R. Civ. P. Rule 41(a)(1)(A)(i) without prejudice on September 14, 2021. (DE 50). The same day the magistrate judge canceled the discovery hearing in light of the notice of dismissal, and denied the motions to compel as moot. (DE 51).

On September 15, 2021, the district court entered its order closing case. The order stated:

> THIS CAUSE comes before the Court on Plaintiff's Notice of Voluntary Dismissal, filed September 14, 2021. (DE 50). Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, a plaintiff may voluntarily dismiss an action by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). Defendant has served neither.

---

[17] Celsius never disclosed a damages expert. That fact speaks volumes about Celsius' case being focused on obtaining injunctive relief not monetary relief.

I note that Plaintiff does not specify in its Notice whether it intends to dismiss this action with or without prejudice. Rule 41(a)(1)(B) provides that "[u]nless the notice or stipulation states otherwise, the dismissal is without prejudice." Accordingly, it is **ORDERED AND ADJUDGED**:

1. This case is DISMISSED WITHOUT PREJUDICE.

2. The Clerk of Court shall **CLOSE THIS CASE.**

3. All pending motions are **DENIED AS MOOT.**
(DE 53-1).

### h. A Shoc's Motion for Sanctions and Fees.

Two months later, on November 5, 2021, A Shoc filed its motion for "sanctions and fees." (DE 54). In the introductory paragraph of the motion A Shoc and KDP requested "that the Court convert the voluntary dismissal into a dismissal with prejudice, and move on the following grounds for an award of attorneys' fees and expert fees against Plaintiff Celsius Holdings Inc. ("Celsius") pursuant to 28 U.S.C. § 1927, the Court's inherent powers, and 15 U.S.C. § 1117(a)." (DE 54 at 1). A footnote to that paragraph stated:

> This Court retains jurisdiction to adjudicate a claim for attorneys' fees and other sanctions resulting from Plaintiff's bad faith conduct. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990). A SHOC defers to the Court whether it is appropriate to sanction Plaintiff's counsel under 28 U.S.C. § 1927 or Celsius under the Court's inherent power. The substantive analysis under either source of the Court's authority is the same. See *Amlong & Amlong v. Denny's, Inc*., 500 F.3d 1230, 1239 (11th Cir. 2007).

> (DE 54 at 1 fn. 1).

A Shoc's motion refers to counsel for Celsius three other times in the motion. On page nine, A Shoc noted that "[i]n compliance with Magistrate Judge Matthewman's order…the parties met and conferred on September 13, 2021 [and] Celsius belatedly agreed to produce documents… going back six years," but A Shoc also claimed without support that "Celsius's counsel was not prepared to meet and confer on any of the other discovery issues." (DE 54 at 9). A Shoc repeated the same claims about Celsius' counsel's alleged lack of preparation without any support on page nineteen. (DE 54 at 19). Finally, on page twenty A Shoc claimed, again with no support, that its fees incurred after it filed its motion to dismiss "were directly caused by opposing counsel's vexatious bad faith conduct." (DE 54 at 20).

A Shoc's motion asserted that it spent "in excess of $350,000 litigating this case," and sought recovery of "$249,357.50, which constitutes its reasonable fees and costs incurred following the filing of its motion to dismiss." The $249,357.50 figure included all of its expert fees and one hundred percent of its attorneys' fees. (DE 54 at 20).

Celsius opposed the motion. (DE 57). Celsius explained that the reason for its dismissal was A Shoc's planned voluntary packaging changes and its hiring of Deutsch LA to rebrand and relabel its products. Celsius attached a beverage industry article announcing the deal between A Shoc and Deutsch LA. (DE 57-2).

Celsius also submitted a declaration of its counsel Joel Rothman that said:
"Counsel for both parties met and conferred numerous times concerning alleged
discovery violations and discovery deficiencies by both sides. Both sides
continuously took issue with each other's discovery deficiencies." (DE 57-1).

Celsius argued that there was no basis for entering a with prejudice
dismissal. (DE 57 at 3-5). Celsius demonstrated that there was no factual or legal
basis to award fees against Celsius under the Lanham Act exceptional case
standard because A Shoc was not a prevailing party and the exceptional case
standard was not met. (DE 57 at 12-14). Celsius demonstrated that there was no
factual or legal basis to award fees against Celsius or counsel under the vexatious
litigant statute, 28 U.S.C. § 1927, either because neither counsel nor Celsius had
been vexatious and that the filing of a litigation is not sanctionable conduct under §
1927. (DE 57 at 10-12). Celsius argued that no discovery orders were violated so
Rule 37 could not be a source of sanctions. (DE 57 at 13). Celsius argued that it
met its requirements under the local rules to meet and confer on the motion with
counsel for defendants. (DE 57 at 15-16). Finally, Celsius argued that the
defendants are not entitled to expert fees under any statute or theory applicable.
(DE 16).

A Shoc and KDP replied and doubled down on the arguments in their
motion. (DE 60). As the defendants did several times before, they submitted

additional gratuitous evidentiary materials with their reply (DE 60-1, 60-2, 60-3), but this time those materials supported Celsius because in them defendants' lead counsel admitted that A Shoc was in the process of changing can designs. (DE 60-1).

### i. The District Court Hears Oral Argument on the Motion for Sanctions.

Five months after the motion was submitted, on May 12, 2022, the district court held oral argument on the motion. (DE 82-1). The transcript reflects that beginning at 10:00 am that day counsel for the defendants presented his argument mostly uninterrupted by the district court.

Thereafter, counsel for Celsius rose to speak. Counsel asked the district court what questions the district court had that counsel could address because counsel and the district court judge were well acquainted, counsel having "practiced before this Court for about two decades" including a jury trial in June 2019 before the pandemic. (DE 82-1 at 12:16-18).

The district court obliged. The district court began questioning counsel by saying "It's hard for me to see how that discovery – those discovery responses were in good faith." (DE 82-1 at 21-22). Counsel for Celsius responded and explained point by point why Celsius' actions in discovery and in the case generally were justified, made in good faith, and did not justify the impositions of attorneys' fees or sanctions under any theory. Over the course of the next hour (the

hearing concluded at 11:11 am), counsel for Celsius responded to each and every one of the questions posed by the district court on all the various aspects of the case raised by the defendants. The transcript speaks for itself.

Importantly, never once during the hearing the district court indicate that it was considering sanctioning counsel for Celsius or imposing a fee award on counsel for Celsius. Never once during the proceedings was counsel for Celsius advised that counsel did something that placed counsel at risk of responsibility to pay sanctions to the defendants. The transcript is devoid of any indication that the district court was even considering counsel as a target. There was no warning of what was to come.

### j. The District Court Awards A Shoc and KDP 100% of their Attorneys' and Expert Fees and Enters the Award "against *Plaintiff's counsel.*"

Two months later, on July 19, 2022, the district court entered the order on appeal granting A SHOC's motion for sanctions and fees. (DE 66). The order condemns Celsius for the "weakness" of its claims and its conduct during discovery but mentions nothing about Celsius' counsel. The order determined that "the weakness of Plaintiffs claims, combined with its conduct throughout the discovery process, rise to the level of bad faith, and I will therefore award Defendants their attorneys' fees as a sanction" under § 1927. (DE 66 at 5).

The district court agreed with A SHOC that the standard for imposing sanctions under § 1927 was met because "Plaintiff 'brought claims with no basis in

law or fact and dragged out discovery with frivolous objections' and 'willfully disregarded the Court's scheduling order' before 'finally withdrawing its claims only to avoid appearing before this Court to justify its conduct.'" (DE 66 at 5 quoting DE 54 at 11).

The order also awarded A SHOC 100% of its fee request without determining what amounts of excess fees were due to the allegedly vexatious litigation. (DE 66 at 8-10). The district court made no effort to allocate any of the fees to any alleged delay or vexatious conduct of Celsius or its counsel.

The order speaks in terms of "plaintiff's" actions throughout, not those of plaintiff's counsel. The order says nothing about any vexatious conduct of counsel for Celsius–the appellants here–whatsoever. Yet the order's conclusion recites that "Defendants are **AWARDED** their reasonable attorneys' and experts' fees in the amount of **$249,357.50.** This amount is entered against *Plaintiff's counsel*." (DE 66 at 10)(emphasis in italics added, emphasis in bold in original).

On August 15, 2022, former counsel for Celsius filed a notice of appeal of the District Court Order.[18] (DE 76).

---

[18] The District Court Order is a final appealable decision under 28 U.S.C. §1291 because it assessed the amount of the sanction and "leaves nothing for the court to do but execute the judgment," as distinguished from an order granting a motion for attorneys' fees but leaving the amount of the fees unresolved and unfixed. *See Santini v. Cleveland Clinic,* 232 F.3d 823, 825 n.1 (11th Cir. 2000) (determining that an order imposing sanctions against counsel but failing to determine the amount of the sanctions was non-final and not appealable).

Celsius did not appeal. Celsius' refusal to appeal created a conflict between Celsius and Celsius' former counsel that forced Celsius' former counsel to withdraw from all representation of Celsius in all matters and lose a fifteen-year client relationship. (DE 68, 69). No new counsel appeared for Celsius in this case.

# IV.   STANDARD OF REVIEW

The usual standard of review applicable to an award of fees, including the imposition of sanctions for violations of 28 U.S.C. § 1927, is abuse of discretion. *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009); *Amlong & Amlong, P.A. v. Denny's, Inc.,* 457 F.3d 1180, 1188 (11th Cir. 2006).

However, this is not the usual case.[19] Where, as here, none of the relevant factors were weighed by the district court, none of the proper legal standards were applied by the district court, and none of the proper procedures were followed by the district court, and these failures resulted in a denial of due process to counsel, the decision on appeal is reviewed *de novo*. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 12 F.3d 1045, 1050 (11th Cir. 1994); *DeVaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993) ("claims that the court's imposition of sanctions denied him constitutionally effective notice" reviewed *de novo*).

Even if the abuse of discretion standard applies, which is not conceded by former counsel for Celsius, this court will typically search the record for such

---

[19] The usual case of sanctions against counsel involves counsel with a record of repeated sanctions and a history of vexatious conduct. That is not this case. Former counsel Joel B. Rothman is a former Bronx, New York prosecutor, has practiced law for over thirty-two years, has been Board Certified in Intellectual Property Law for fourteen years, is admitted in good standing to four state bars (Florida, New York, Georgia, and Washington State), the U.S. Supreme Court, seven Courts of Appeal, and countless federal district courts; Rothman has never been disciplined or sanctioned by any court. (DE 79-1).

abuse and a "determination that the findings of the trial court are fully supported by the record." *Pesaplastic C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1519 (11th Cir. 1986). To reverse the district court, this court must be "left with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors." *Dorey v. Dorey*, 609 F.2d 1128, 1135-36 (5th Cir.1980).

Even where the abuse of discretion standard applies, this court reviews questions of law *de novo* and factual findings for clear error. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008); *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006). Furthermore, in reviewing a district court's determination "whether a claim was or became frivolous," this Court views the evidence in the light most favorable to the non-prevailing plaintiff. *Johnson v. Florida*, 348 F.3d 1334, 1354 (11th Cir. 2003) (citing *EEOC v. Pet, Inc.*, 719 F.2d 383, 384 (11th Cir. 1983)).

Most certainly, failing to follow proper legal standards, failing to follow proper procedures, or "bas[ing] an award upon findings of fact that are clearly erroneous," constitutes an abuse of discretion. *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1180 (11th Cir. 2005); *Smith v. Grand Bank & Tr.,* 193 F. App'x 833, 836 (11th Cir. 2006). A district court's mistake of law is an abuse of discretion. *Gray v. Bostic*, 613 F.3d 1035, 1039-40 (11th Cir. 2010). A district court's failure to

provide a "concise but clear explanation of its reasons for a fee award" constitutes an abuse of discretion that frustrates appellate review. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010) ("It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination . . . ."). A district court's failure to provide a legal basis for an award of fees is an abuse of discretion. *Gowdy v. Mitchell (In re Ocean Warrior, Inc.),* 835 F.3d 1310, 1319 (11th Cir. 2016).

## V.    SUMMARY OF THE ARGUMENT

The district court's order sanctioning former counsel must be reversed and the sanctions order against counsel expunged. The district court failed to apply the proper legal standard or to follow proper procedures in sanctioning counsel. The district court's fee award was based upon one-sided and unsupported findings of fact. The district court failed to view the facts in the light most favorable to counsel for Celsius. The district court's determination that discovery abuse occurred was wrong because no determination concerning the alleged discovery was ever made. The district court's order lacks the necessary concise and clear explanation of its reasons; the order contains no reasons at all to sanction former counsel for Celsius. The district court denied Celsius' former counsel due process.

The order says nothing about former counsel engaging in unreasonable or vexatious conduct. The order says nothing about former counsel multiplying

proceedings. The order says nothing about former counsel acting in bad faith. In fact, the order doesn't even mention former counsel until the conclusion on page ten when it entered sanctions "against Plaintiff's counsel." The order contains no conclusions based on fact concerning any actions by Celsius or its counsel that support sanctions at any level, including at the level of vexatiousness required under § 1927.

The district court's order awarding A Shoc and KDP one hundred percent of its attorneys' fees and all of its expert fees incurred for defense of the case without apportioning out the amount unrelated to any alleged excess proceedings was also clearly erroneous. Section 1927 only permits fees for multiplication of proceedings, not fees for all proceedings like the district court awarded. No legal or factual basis for an award of expert fees exists either.

The district court's order must be reversed, vacated and the sanctions order expunged.

# VI.    ARGUMENT

## a.  The Standards Applicable to § 1927 Sanctions

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). The American Rule dates to 1799. Under it,

> [a]ttorneys, solicitors, and proctors may charge their clients reasonably for their services, in addition to the taxable costs, but nothing can be taxed as cost against the opposite party, as an incident to the judgment, for their services, except the costs and fees therein described and enumerated. They may tax a docket fee of twenty dollars on a final hearing in admiralty, if the libellant recovers fifty dollars, but if he recovers less than fifty dollars, the docket fee of the proctor shall be but ten dollars.

*The Baltimore*, 8 Wall. 377, 392 (1869).

The order appealed from purports to sanction former counsel for Celsius under the vexatious litigant statute that is in derogation of the American Rule. 28 U.S.C. §1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States… who so multiplies the proceedings in any cases unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. §1927.

Section 1927 "is concerned only with limiting the abuse of court processes," and "is indifferent to the equities of a dispute and to the values advanced by the substantive law." *Roadway Express v. Piper*, 447 U.S. 752, 762 (1980). The statute was designed to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1544 (11th Cir. 1993) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). For sanctions under section 1927 to be appropriate, "[s]omething more than a lack of merit is required or they would be due in every case." *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001), *amended on reh'g,* 311 F.3d 1077 (11th Cir. 2002).

Section 1927 must be "strictly construed" because it is "penal in nature." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997). The imposition of sanctions pursuant to §1927 requires a finding that (1) counsel engaged in unreasonable and vexatious conduct, (2) that this conduct multiplied the proceedings, and (3) that the amount of sanction bears a financial nexus to the cost associated with the excess proceedings. *Peterson,* 124 F.3d at 1396.

An attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006) quoting *Avirgan,* 932 F.2d at 1582. Section 1927 "is

36

not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Id*.

Mere negligence is not sufficient to justify sanctions. *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003). Sanctions are not warranted simply because counsel's performance did not rise to the "best and highest traditions of the legal profession." *Peterson*, 124 F.3d 1396. Bad faith in the context of § 1927 sanctions "turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Amlong*, 457 F.3d at 1190.

The amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. *McMahan,* 256 F.3d at 1128. The nexus requirement means that § 1927 applies only to the multiplication of proceedings and not the initiation of proceedings. *See Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1224-1225 (10th Cir. 2006). It is no exaggeration to argue that the district court violated all the rules governing the imposition of sanctions against counsel.

### b. The Reasons Why this Court Must Reverse and Vacate/Expunge

*First*, the order on appeal *lacks any findings* about the conduct of counsel whatsoever. There is literally nothing in the district court's order that describes the conduct of counsel for Celsius as opposed to the conduct of Celsius *through counsel*. Counsel for Celsius is never even mentioned until the conclusion of the order. The order rails against Celsius' objections to discovery, and Celsius' dismissal of the action allegedly to avoid a hearing on Celsius' objections to

discovery before the Magistrate Judge, but the order is silent about whether counsel or counsel's client was to blame. The district court's failure to set forth concise reviewable findings of fact requires reversal.

*Second*, to the extent the order on appeal can be read as implicating counsel in the actions taken on Celsius' behalf, the order fails to indicate what *counsel* did—as opposed to what Celsius did–that was *unreasonable or vexatious*. The order on appeal speaks exclusively about plaintiff (*i.e.*, Celsius) not plaintiff's counsel. Plaintiff's counsel is Celsius' legal representative. Plaintiff's counsel is not Celsius. The district court made no distinction between the two. Plainly the order cannot satisfy the requirement of findings supporting behavior either unreasonable or vexatious by counsel where it says nothing about counsel's behavior whatsoever.

*Third*, to the extent the order on appeal discusses the behavior of Celsius, and therefore that behavior should somehow *sub silentio* be understood to reflect poorly on counsel, the behavior of counsel was arguably reasonable. The district court faulted Celsius for interposing objections to requests for production that were "lengthy, generic, and substance-free … that the request was broad and vague" because, in the district court's view, these objections did "not reflect a good faith effort to participate in the discovery process." (DE 66 at 4). But the record fails to support the district court's criticisms when considered in a light most favorable to

counsel as required because the discovery objections were detailed, valid, and supported. Furthermore, the discovery objections were never ruled upon.

*Fourth*, nothing in the district court's order supports the conclusion that counsel was objectively vexatious. *See* Black's Law Dictionary 1596 (8th ed. 2004) (defining "vexatious" as "without reasonable or probable cause or excuse; harassing; annoying"). The litigation itself could not have been "without reasonable or probable cause" because the defendants' motion to dismiss was never decided. Celsius' objections to discovery could not have been "without reasonable or probable cause" because the hearing on the objections was never held and therefore their validity was never determined. It was a mistake of law–a legal definitional mistake–to call Celsius' counsel's litigation conduct vexatious.

*Fifth*, nothing that either Celsius or its counsel did multiplied the proceedings. The case was scheduled on the district court's rocket docket. Fewer than six months were allocated for discovery. Celsius and counsel complied with all deadlines. When the case was dismissed there was still two months left before discovery closed. Neither Celsius nor its counsel did anything to add to the work of the district court or the defendants. To the contrary, by dismissing when it did Celsius arguably saved the district court and the defendants from considerable work. The district court did not have to decide the pending motion to dismiss, the Magistrate Judge was able to deny the pending motions to compel as moot, and the

defendants were spared from engaging in discovery. And, of course, if the motion had been denied, the defendants would have moved for summary judgment, something Celsius' dismissal avoided the need for also. No one knows or can accurately predict what would have happened had Celsius not dismissed, but most assuredly the result would have been more work for the parties and the court not less work. Concluding that Celsius or its counsel multiplied the proceedings was wrong.

*Sixth*, since there was no excess cost incurred by anyone, the district court's award of the defendants' full costs and fees bore a nexus to nothing. The defendants demanded every penny they spent after they filed their motion to dismiss, and the district court gave them everything they asked for without any justification. The defendants received a windfall. The award was unjustified. The basis for the imposition of sanctions was plainly and improperly the initiation of proceedings.

*Seventh,* the district court's order is plainly and obviously punitive towards counsel. Apart from statements relating to legal standards, the order uses the term "bad faith" only twice, and both times the district court was referring to Celsius, not Celsius' counsel. The first time the district court wrote: "I am persuaded that these objections, combined with *Plaintiff's* failure to produce any documents or other evidence, and the timing of *Plaintiff's* dismissal on the eve of the hearing

before Judge Matthewman, rise to the level of bad faith." (DE 66 at 4)(emphasis added). The second time the district court wrote: "I find that the weakness of *Plaintiffs* claims, combined with *its* conduct throughout the discovery process, rise to the level of bad faith, and I will therefore award Defendants their attorneys' fees as a sanction." (DE 66 at 5)(emphasis added). The order contains no other accusations of bad faith, and no reference to any acts or omissions committed by counsel for Celsius. Why then did the district court conclude the order by awarding defendants the full amount of their attorneys' and expert fees "entered against *Plaintiff's counsel?*" Obviously, the district court's order was punitive punishment directed at counsel as retribution for some undisclosed past offence.

*Finally*, the punitive aspects of district court's order raise numerous constitutional and due process concerns rarely seen outside of the context of contempt proceedings. The district court fined counsel for a civil litigant without the most basic Constitutional protections. Counsel for Celsius was deprived of their property but never advised of their transgressions against the district court, and never given an opportunity to defend themselves against those charges, all in violation of counsel's due process rights under the Fifth Amendment. Upon conviction, counsel for Celsius was fined; the fine was punitive and excessive in violation of the Eighth Amendment, and the fine was assessed solely on the basis of counsel's role as counsel exercising his First Amendment rights. No bar

association or grievance committee could ever summarily sanction counsel in the manner that the district court sanctioned Celsius' counsel below. The district court's order against Celsius' counsel must be reversed.

## 1. The Order on Appeal Lacks Findings Concerning the Actions or Omissions of Counsel for Celsius

Findings supporting counsel's bad faith are required to support the imposition of sanctions pursuant to § 1927. Without a basis to support the district court's final decree that the "amount [of § 1927 sanctions] is entered against *Plaintiff's counsel*" was based on something counsel did or did not do, the district court's order must be reversed.

To find a violation of § 1927, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997).

No such findings were made. The conduct referred to throughout the order concerns the conduct of "plaintiff," namely Celsius. The failure to make findings concerning the conduct of counsel renders the district court's order defective. See *Amlong,* 457 F.3d at 1199-200 (the district court's failure to explain how it thought

the magistrate judge had misstated or misapplied the law, or why they were "not based on the record," indicated the district court improperly discarded the magistrate judge's factual findings, including his critical credibility determinations, along with his legal conclusions, and required reversal).

## 2. The Order on Appeal Lacks Any Basis to Show that Counsel Acted Unreasonably or Vexatiously

For an award under §1927 to be proper, the facts must show that the "attorney's actions [were] so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *See Casa Duse, LLC v. Merkin,* 791 F.3d 247, 264 (2nd Cir. 2015) (quoting *United States v. International Bd. of Teamsters,* 948 F.2d 1338, 1345 (2nd Cir. 1991).

Here, there are no such facts showing former counsel, as opposed to Celsius, was responsible for delay. The order on appeal lacks any basis to show that former counsel for Celsius multiplied the proceedings in any way. The order indicates that "Plaintiff [Celsius] has failed to offer any justification for its failure to meaningfully participate in discovery, which caused Defendants to file multiple discovery motions, unnecessarily and vexatiously multiplying litigation and driving up Defendants' attorneys' fees." (DE 66 at 7). The order says nothing about former counsel for Celsius being at fault.

### 3. The Order on Appeal Lacks any Basis to Impose Sanctions.

The "weakness of Plaintiff's claims" cannot be considered under §1927. *See Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003) ("For sanctions under section 1927 to be appropriate, something more than a lack of merits is required."). Section 1927 "only applies to unnecessary filings after the lawsuit has begun." *Trump v. Clinton,* No. 22-14102-CV-MIDDLEBROOKS, 2023 U.S. Dist. LEXIS 11432, at *8 (S.D. Fla. Jan. 19, 2023)[20] *quoting Macort v. Prem Inc.,* 208 F. App'x 781, 786 (11th Cir. 2006). The filing of an action that the district court later finds not to be meritorious does not justify § 1927 sanctions. *See Riley v. Hannibal,* 1:16-CV-02544-LMM, 2018 WL 8665428, at *3 (N.D. Ga. Nov. 27, 2018) (denying plaintiff's motion for section 1927 sanctions because "asserting a claim or position that the court later finds not to have merit does not warrant sanctions under 1927, otherwise sanctions would be required in every case.").

The district court's determination that sanctions were warranted was based upon "the weakness of Plaintiff's claims, combined with its conduct throughout the discovery process, [that] rise to the level of bad faith." (DE 66 at 5). That was not bad faith nor a valid basis for sanctions. To be sanctionable under §1927, the

---

[20] The extensive legal and factual analysis the district court engaged in before assessing sanctions against the lawyers in *Trump* stands in stark contrast to the lack of analysis engaged in by the same district court judge in this case. All the critical legal considerations the district court followed in *Trump* were cast aside below.

conduct must "rise to the level of a serious and studied disregard for the orderly processes of justice." *Dreiling v. Peugeot Motors of Am., Inc.,* 786 F.2d 1159, 1165 (10th Cir. 1985). Flawed lawsuits and arguments are not sanctionable conduct under §1927.

### 4. Nothing in the Record Supports the Conclusion that Counsel Acted in Bad Faith or was Vexatious.

Before a court can impose sanctions under § 1927 "there must at least be statements on the record which this court can construe as an implicit finding of bad faith." *See Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll.,* 103 F.3d 294, 297-298 (3rd Cir. 1996). "'Bad faith' is the touchstone." *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003). Bad faith is not merely weak claims combined with objections to discovery that never see the light of day at a hearing. Bad faith requires more. See, e.g., *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (defining bad faith under the courts' inherent power to award sanctions as "knowingly or recklessly rais[ing] a frivolous argument, or argu[ing] a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."). Moreover, "[b]ad faith is measured objectively, such that a 'court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the

proceedings.'" *Coleman v. Oasis Outsourcing, Inc.*, 779 F. App'x 649, 653 (11th Cir. 2019) quoting *Amlong,* 500 F.3d at 1241.

There was no objective evidence of bad faith. The district court's conclusory statement about bad faith was unsupported by any facts.

### 5. Nothing Celsius' Counsel Did Multiplied the Proceedings.

The only conduct mentioned by the district court that occurred during the litigation–as opposed to the commencement of the litigation itself–was Celsius' discovery objections. But discovery disputes are not sanctionable conduct under § 1927. *See International Brominated Solvents Ass'n v. American Conference of Governmental Industrial Hygienists, Inc.,* No. 5:04-cv-394(HL), 2008 WL 1805445, at *5 (M.D. Ga. April 18, 2018) (holding that multiple discovery disputes leading to motions to compel is not a demonstration of ideal, cooperative discovery process envisioned by the Federal Rules; however, the behavior does not warrant sanctions); *see also Hicks-Washington v. Housing Authority of City of Fort Lauderdale,* No. 18-61662-CIV-MORENO/SELTZER, 2019 WL 341185, at *5 (S.D. Fla. Jan. 28, 2019) (denying plaintiff's motion for sanctions because even though the court ordered defendants to provide better answers to written discovery, there was no evidence to support plaintiff's conclusory assertion that defendants acted in bad faith.)

The Honorable Magistrate Judge William Matthewman was referred the pending discovery motions. When Celsius filed its notice of dismissal, Judge Matthewman exercised his discretion not to decide the motions and denied them as moot. The motions never saw the light of a hearing. No discovery orders were entered. There was no determination that Celsius "failed to meaningfully participate in the discovery process" as the district court indicated in its order on appeal. Magistrate Judge Matthewman never got to determine whether it was the "conduct of [Celsius] throughout the discovery process" that was the problem as the district court concluded, or whether Celsius' objections to A SHOC's irrelevant and harassing discovery were proper and justified as Celsius maintained.

Even if an argument could be made that Celsius' objections were unjustified, there was no delay, and § 1927 requires delay to trigger sanctions, because they are "intended to deter any attorney from intentionally and unnecessarily delaying judicial proceedings." *Peer v. Lewis,* 606 F.3d 1306, 1314 (11th Cir. 2010). The district court's entry of § 1927 sanctions based on discovery disputes referred to Magistrate Judge Matthewman, but not determined by him, was wrong.

## 6. The District Court's Order Lacks any Nexus to Excess Proceedings.

The amount of the sanction bears no nexus to the financial cost of excess proceedings. In order for § 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the

proceedings. "Under the plain statutory language, objectionable conduct–even 'unreasonable and vexatious' conduct–is not sanctionable unless it results in proceedings that would not have been conducted otherwise." *Peterson,* 124 F.3d at 1396. Here, no effort was made to determine what, if any, proceedings would have been conducted otherwise. Instead, the district court just awarded A SHOC its entire attorneys' fees and expert fees. That was improper and contrary to this court's requirements. See *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (district court's failure to place on the record evidence sufficient to explain how it arrived at the sanction imposed reflective of the costs entailed by the attorneys' misconduct rendered it arbitrary, based on unsupported assumptions, and subject to reversal).

### 7. The District Court's Order was Punitive and Violated the Rights of Counsel for Celsius

#### i. Celsius' Former Counsel was Deprived of Due Process.

Attorneys charged with violating the rules are "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550-51 (1968).

> [T]he power of the court should never be exercised without notice to the offending party of the grounds of complaint against him, and affording him ample opportunity of explanation and defense. This is a rule of natural justice, and is as applicable to cases where a proceeding is taken to reach the right of an attorney to practice his profession as it is when the proceeding is taken to reach his real or personal property.

*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 354-55 (1871). "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express v. Piper*, 447 U.S. 752, 767 (1980).

This court must determine whether the district court put former counsel for Celsius on notice that their actions subjected them to sanction and whether the sanction was "just" under the circumstances. *BankAtlantic,* 12 F.3d at 1050. It did not. The district court never gave former counsel notice that such sanctions were being considered by the court or an opportunity to respond. The district court never asked former counsel to brief the question whether fees and costs should be assessed against them. No order to show cause was issued. The district court disregarded all counsel's due process protections. Nor was the award of 100% of the opposing party's attorneys' fees and expert fees "just" under the circumstances. The award of all of the opposing party's fees bears no relationship to anything reasonable.

### ii. Former Counsel for Celsius were Punished for Exercising their Client's First Amendment Rights

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). The district court penalized former counsel for Celsius for exercising their First Amendment rights on behalf of their

client. The district court made that clear by the magnitude of the sanction and the fact that it pertained to answers and objections to discovery that the court found offensive.

### iii. Sanctioning Counsel for Celsius 100% of the Defendants' Attorneys' Fees and Expert Costs was Grossly Disproportional to any Offence Perceived by the District Court and Can Only Be Explained as Punishment.

The Excessive Fines Clause of the Eighth Amendment prohibits the government from imposing excessive fines as punishment; civil sanctions fall within the scope of the amendment. See *Austin v. United States*, 509 U.S. 602, 610 (1993). If a civil sanction "can only be explained as serving in part to punish," then the fine is subject to the Eighth Amendment. *Austin*, 509 U.S. at 610. If the civil penalty is punitive and thus subject to the Eighth Amendment, it will be found constitutionally excessive if it is "grossly disproportional to the gravity of [the] offense." *United States v. Bajakajian,* 524 U.S. 321, 334 (1998).

The entry of the award of 100% of the defendants' attorneys' fees and expert costs "*against counsel*" was punishment pure and simple. Punishment for what is unclear and unstated, thus constitutionally defective.

# VII.   CONCLUSION

The district court's order should be reversed, vacated, and the sanction against counsel expunged, with costs.[21]

Dated: February 13, 2023

> Respectfully submitted,
>
> **KAUFMAN DOLOWICH & VOLUCK, LLP**
>
> */s/ Avery A. Dial, Esq.*
> **Avery A. Dial, Esq.**
> Florida Bar No.: 732036
> Email: adial@kdvlaw.com
> **Barbara R. Schabert, Esq.**
> Florida Bar No.: 121421
> Email: bschabert@kdvlaw.com
> 100 SE 3rd Avenue, Suite 1500
> Fort Lauderdale, Florida 33394
> Telephone: (954) 302-2360
> Facsimile: (888) 464-7982
> *Counsel for Defendants, Joel B. Rothman,*
> *Craig A. Wirth and SRIPLAW, P.A.*

---

[21] A Shoc and KDP forced Celsius' former counsel during the Christmas holidays to bond this appeal under pain of enforcement and embarrassing post-judgment discovery into former counsel's personal and law firm finances. The bond premium and other costs permitted under F.R.A.P. 39 should be taxed to appellees.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the word limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 12,487 words.

2.     This document complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word v. 2208 with Times New Roman size 14.

*/s/ Avery A. Dial, Esq.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of February, 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Avery A. Dial, Esq.*