*In the*

# UNITED STATES COURT OF APPEALS

*for the*

# ELEVENTH CIRCUIT

JOEL B. ROTHMAN, CRAIG A. WIRTH, AND SRIPLAW, P.A.,

*Appellants,*

v.

A SHOC BEVERAGE, LLC, ET. AL.,

*Appellees.*

On Appeal from the
United States District Court for the Southern District of Florida
No. 9:21-cv-80740-DMM-WM
The Honorable Donald M. Middlebrooks

# BRIEF OF *AMICI CURIAE* RANDAZZA LEGAL GROUP, ADAM D. PALMER, AND JASON WEISS IN SUPPORT OF APPELLANTS

Marc J. Randazza
Randazza Legal Group, PLLC
30 Western Avenue
Gloucester, Massachusetts 01930
Tel: 888-887-1776
ecf@randazza.com

Attorneys for *Amici Curiae*

**No. 22-12687-HH**
***Rothman, et al. v. A Shoc Beverage, LLC, et al.***

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT (CIP)**

*Amici Curiae* Randazza Legal Group, PLLC, Adam D. Palmer, and Jason Weiss, by and through their undersigned counsel and pursuant to 11th Cir. R. 26.1-1(a) hereby state as follows:

Upon information and belief based on due diligence research performed, the following are believed to have an interest in the outcome of this case or appeal:

A Shoc Beverage, LLC

Celsius Holdings, Inc.

Coffey Burlington, P.L. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

DeSantis, Carl – Shareholder of Celsius Holdings, Inc.

Dial, Avery A. – Counsel for Appellants

Hogan, Howell S. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaplan, Kevin C. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaufman Dolowich & Voluck, LLP – Counsel for Appellants

Keurig Dr. Pepper, Inc.

Kopp, Christopher F. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Milmoe, William H. – Shareholder of Celsius Holdings, Inc.

Palmer, Adam D. – Amicus Curiae

Randazza Legal Group, PLLC – *Amicus Curiae*, and Counsel for *Amici Curiae*

Randazza, Marc J. – Counsel for Amicus Curiae Randazza Legal Group, PLLC

Rothman, Joel B. – Appellant

Schabert, Barbara R. – Counsel for Appellants

Shing, Li Ka – Shareholder of Celsius Holdings, Inc.

SRIPLAW, P.A. – Appellant

Teitelbaum, Meir – Counsel for Celsius Holdings, Inc.

Weiss, Jason – Amicus Curiae

Wirth, Craig A. – Appellant

Date: March 1, 2023.

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza

*Attorney for Amicus Curiae*
*Randazza Legal Group, PLLC*

# Table of Contents

Interest of Amici ........................................................................... 1

Statement of the Issues ............................................................. 2

Summary of the Argument ........................................................ 2

Argument ...................................................................................... 3

    1.0   The order imposes unreasonable duties on attorneys. ............... 3

    2.0   The order interferes with the attorney-client relationship. ................................................................. 8

    3.0   The circumstances were exacerbated by the district court.................................................................. 10

    4.0   Imposing such sanctions on counsel chills access to justice. ...................................................................... 11

Conclusion.................................................................................... 14

# Table of Citations

**CASES**

*Abrams v. United States*, 250 U.S. 616 (1919) ........................................... 7

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ...................... 8

*Milburn v. United States*, 734 F.2d 762 (11th Cir. 1984) ....................... 11

*Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253 (11th Cir. 2014) ... 10


**STATUTES**

28 U.S.C. § 1927 ................................................................................ 2, 8, 9


**RULES**

Fed. R. Evid. 702 .................................................................................... 7, 8


**OTHER AUTHORITIES**

Gardner & Brandt, *The Doctors' Choice is America's Choice*, 96 Am. J. Pub. Health 222 (2006) ........................................................................ 7

Honorable Donald M. Middlebrooks, "The Independence of the American Lawyer," Thirteenth Annual Chester Bedell Memorial Lecture (Jun. 26, 2015) ........................................................................ 10

Kenneth A. Myers, *Cigarette Smoking: An Underused Tool in High-Performance Endurance Training,* 182 Canadian Med. Assoc. J. 867 (Dec. 14, 2010) ........................................................................................ 7

Mika Rissanen, "Beer breaks during the Tour de France. Some observations on beer and cycling in the early 1900s," Ludica, annali di storia e civiltà del gioco, 17-18 (2011-2012), pp. 188-190. ............... 6

Southern District of Florida, Volunteer Opportunities and Pro Bono Assistance (last accessed Feb. 27, 2023) .............................................. 13

## Interest of *Amici*[1]

Randazza Legal Group, PLLC is a law firm comprised of attorneys that practice First Amendment and intellectual property law in courts across the country, including in the state and federal courts in Florida.

Adam D. Palmer was admitted to practice law in the State of Florida in 1988 and before the Federal Courts in 1989. Mr. Palmer's practice has been focused in the areas of commercial and business-related litigation for more than 34 years.

Jason Weiss is a 22-year litigation attorney with 15+ years of experience practicing before multiple federal courts in matters involving the Telephone Consumer Protection Act, Fair Credit Reporting Act, American's With Disabilities Act, Intellectual Property Disputes, Contracts and other areas of the law.

*Amici* have an interest in ensuring that the rules regarding the imposition of sanctions against attorneys within this Circuit are applied uniformly, fairly, and with due process.

---

[1] No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. No person other than *amici curiae* contributed money that was intended to fund preparing or submitting this brief. All parties consent to the filing of this brief. This brief is timely. *See* App. Dkt. 36.

## Statement of the Issues

1.      Whether the district court abused its discretion by imposing sanctions on Appellants where issues of fact and law were not clearly established.

2.      Whether the district court abused its discretion by imposing sanctions on Appellants where Appellants relied on the expertise of experts and their clients rather than their own knowledge.

## Summary of the Argument

As practicing litigation attorneys, *amici curiae* ask this Court to find that the district court's imposition of sanctions against Appellants pursuant to 28 U.S.C. §1927 was improper and reverse.

First, the sanctions order imposes an unreasonable duty on attorneys, because they necessarily rely on the advice of their clients and experts when deciding whether to pursue claims where the issues involved are complex and scientific in nature.

Second, the sanctions order improperly interferes with the attorney-client relationship, disrupting the trust between attorneys and their clients and requires attorneys to take positions adverse to their clients.

Third, the sanctions order improperly punishes Appellants due to matters outside of their control, namely the delay in the district court's decision on Appellees' motion to dismiss and the unnecessarily-short scheduling order.

Finally, the sanctions order will negatively impact access to justice by discouraging attorneys from accepting cases that present novel or complex issues, or where indigent clients require representation where the newly-elevated likelihood of sanctions upon the attorney presents high risk and low reward for the attorney.

## Argument

### 1.0     The order imposes unreasonable duties on attorneys.

Attorneys must wear many hats when representing a client. On some days, they are litigators. On other days, they may be researchers, therapists, advisors, and mediators. Aside from limited exceptions, attorneys are not scientists. The district court's order here, though, imposed an additional burden on Appellants – that pre-suit, they interpret and evaluate complex scientific evidence, and then, despite conflicting scientific evidence, have absolute certainty that they will come to the same conclusion as the court. Meanwhile, the district court did the

very thing it faults the attorneys for doing here – relying on one-sided evidence to make scientific determinations without the benefit of full expert discovery.

In this case, Plaintiff filed a complaint alleging that A Shoc misleads consumers with the use of two claims on its packaging – "that its … products are 'thermogenic' and 'accelerates metabolism,' when in fact they [are not and] do not." Complaint, ¶¶ 60, 111. The district court found that these statements were true because A Shoc's product contains caffeine, which studies have found is thermogenic and accelerates metabolism, and thus, Plaintiff's claims were baseless. Dkt. 66 at 5-6.

The district court relied on a study that notes that caffeine, when *dosed in a controlled laboratory study*, increases both energy and metabolism.[2] Dkt. 66 at 6. The issue, of course, is that an energy drink is not an isolated administration of pure caffeine and contains additional

---

[2]   The district court observed:

The studies further explain that "single 100 mg doses of caffeine have been shown to increase metabolic rate 3–4%, while a titrated dosing pattern of 6 x 100 mg over a 12 h period may increase expenditure 8-12%" and that "[n]utritional supplements containing [caffeine] purportedly facilitate thermogenesis and lipolysis. …"

Dkt. 66, fn. 3.

chemicals and nutrients. Those other additives have effects on the ultimate efficacy of the caffeine in the consumer. Accordingly, if someone sold a can of *pure caffeine*, it seems that this study would support the claim that the contents of the can are "thermogenic."[3]

However, the issue is not whether *an ingredient* inside a can, in isolation, is "thermogenic," but whether *all* the ingredients, combined, make it "thermogenic." Gasoline by itself will fuel a car. But, a gallon of water with a drop of gasoline will not fuel a car. Pure magnesium is highly flammable, but dietary magnesium supplement tablets are not.

The uncertain effect of caffeine on a consumer in combination with the additional chemicals in an energy drink is the reason these types of claims are subject to intense study and the reason Plaintiff has spent millions of dollars commissioning such studies. Meanwhile, lawyers are neither scientists nor experts. The district court improperly expected that the attorneys in this case have an independent scientific grasp of the complex chemistry in this case, which the court itself only learned from an expert report presented by the defense.

---

[3] *Amici* admit that they have an imprecise understanding of the term "thermogenic," as none of them are scientists, nutritionists, chemists, nor biologists.

While *amici* understand the basic thesis of the studies cited by the court, they advance the foregoing argument not as experts in the effects of caffeine, metabolism, automobile fuel, or fire science. They are neither scientists nor nutritionists. This is not a professional failing of *amici*, however – it is the point. In a case such as this one, involving a difference of opinion on science, attorneys rely on both their clients (who are subject matter experts) and the expert witnesses they hire, to tell them when the defendant raises a good point, or when they are grasping at straws.

Further, the district court appears to have not only relied on scientific conclusions in its decision, but seems to have decided that "the science" could not be challenged. Meanwhile, there was a time that Tour-de-France cyclists drank beer and smoked cigarettes because "science" said that it would enhance their performance.[4] In fact, with improper correlation or extrapolation of data, such as applying laboratory results of the effects of caffeine in isolation to its real-world consumption, one can still argue world-class cyclists should start smoking. *See* Kenneth A. Myers, *Cigarette Smoking: An Underused Tool in High-Performance*

---

[4]  *See* Mika Rissanen, "Beer breaks during the Tour de France. Some observations on beer and cycling in the early 1900s," Ludica, *annali di storia e civiltà del gioco*, 17-18 (2011-2012), pp. 188-190.

*Endurance Training,* 182 CANADIAN MED. ASSOC. J. 867 (Dec. 14, 2010).

Before tobacco litigation, there was a time when doctors recommended certain brands of cigarettes to their patients. Gardner & Brandt, *The Doctors' Choice is America's Choice*, 96 AM. J. PUB. HEALTH 222 (2006).

Lawyers should not be bound by science they do not necessarily understand, where there is a difference in informed and reliable opinion, in a world of constantly-shifting science. After all, the entire point of "science" is that it is a process. We never close the book on further developments, and just as "time has upset many fighting faiths,"[5] so has time and progress set aside "settled science."

On matters that hinge on issues of complex science, attorneys should be given deference in pursuing such claims, even when an adverse party disagrees with those claims and their experts.[6] To find otherwise imposes an unfair burden on attorneys and parties seeking to bring science-based claims. The Court's decision here will not only affect

_____

[5] *Abrams v. United States*, 250 U.S. 616, 630 (1919).

[6] The first qualification of an expert witness is that their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). It follows that this same type of evidence should be relied upon by attorneys in prosecuting or defending cases.

Appellants, but it will affect lawyers bringing and defending claims for personal injuries, medical malpractice, product liability, and patent infringement, as well as prosecutors and defense counsel in criminal cases. Fed.R.Evid. 702 and the *Daubert* standard are the gatekeepers and, even then, both sides often get to argue what the science is; unusual sanctions under §1927 for arguing over science is improper and unfair.

## 2.0 The order interferes with the attorney-client relationship.

The attorney-client relationship is a relationship of mutual trust and mutual reliance. The sanctions order below threatens to harm that relationship and build a wall of distrust.

First, as discussed *supra*, attorneys regularly rely on their clients for their expertise and factual understandings. While a healthy skepticism is necessary, the sanctions order requires more. Where an attorney does not have personal expertise in a scientific discipline, he or she would be expected to chase down every publication in the field in the off chance that their client is mistaken. This would be burdensome in any case, but in a case involving scientific or nutritional claims, the district court tasks lawyers with the responsibility for becoming scientists before signing a complaint – when reasonable scientists can disagree.

Appellants' client is a large enterprise which employs and retains scientists and dieticians. It is hard to imagine how Appellants could have better evaluated the claims. Should they have challenged their client and demanded the advice of an independent expert? Should they themselves have become experts in nutrition-science before filing suit? Of course not. As long as their clients present plausible, actionable claims, it is an attorney's duty to advance their clients' claims. This novel order requiring more serves to create a harmful rift in the attorney-client relationship.

Finally, imposing §1927 sanctions in cases where matters are subjective or up for debate creates additional problems. Where, as here, a party moves for sanctions against another party and their attorneys in the alternative, the attorney is immediately placed in a precarious position. They have a duty to defend their client, but they also have a right to defend themselves, and their argument may necessarily inculpate their client. Such a situation creates an untenable conflict that should be avoided wherever possible.

### 3.0 The circumstances were exacerbated by the district court.

District courts maintain control over their docket, and they are free, with little limitation, to set the pace of litigation before them. *See Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014). Here, the district court employed its so-called "rocket docket" protocol,[7] requiring the Plaintiff to conduct discovery in approximately five months, to furnish an expert witness report in approximately two and a half months, and to file its summary judgment motion in approximately six months. *See* Dkt. 20. A jury trial was scheduled approximately nine months after filing. *See id*.

While requiring the parties to move like Mercury, the district court itself moved with far less urgency. Appellees moved to dismiss, and this motion remained pending when the voluntary dismissal was filed, 81 days after the motion was fully briefed. At that point, the parties were approximately halfway through discovery, and the issue of whether Plaintiff's claims would survive was still open.

---

[7] *See* Honorable Donald M. Middlebrooks, "The Independence of the American Lawyer," Thirteenth Annual Chester Bedell Memorial Lecture (Jun. 26, 2015) at 4, available at: https://floridatls.org/wp-content/uploads/2019/11/2015-Hon.-Donald-M.-Middlebrooks.pdf.

Motions to dismiss are intended to test the claims of a plaintiff, weeding out those that do not survive scrutiny. *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). Here, the parties were forced into expensive and broad discovery before this preliminary issue had been decided. The parties had no choice but to proceed to discovery; if the claims were not dismissed, they would soon be preparing for trial. The delay in dismissing the case was assigned to Appellants, with the attorneys' fees and costs incurred since the motion to dismiss was filed. Had the motion to dismiss been decided sooner, or had the shortened discovery period not required the parties to proceed at break-neck speed, the ultimate sanction would have been substantially less. Although neither issue was subject to the control of Plaintiff or Appellants, it was certainly held against them. In this case, it was unjust of the district court to force the parties into great expenditures due to the "rocket docket" while the court itself moved at no-wake speed.

## 4.0 Imposing such sanctions on counsel chills access to justice.

Finally, the imposition of sanctions on attorneys based upon disputed issues of fact and law, as they were here, deters attorneys from

accepting representation of clients in cases where novel claims are at issue and where clients cannot afford to pay.

Very rarely are cases straightforward. In complex cases, attorneys often advance novel claims and take chances with claims that are not guaranteed to succeed. These situations should not be discouraged unless they are clearly baseless, otherwise it is how law is made. While there certainly are problems with frivolous cases being filed by attorneys for improper purposes, this is not the case here.

Appellants advanced established theories of law and plausible factual claims. Nevertheless, they were sanctioned by the district court. Where attorneys assert such claims, backed by existing law, they should not fear sanctions. If this decision stands, it will discourage attorneys from pursuing novel or complex cases in favor of cases that better fit the cooker cutter. In turn, this ultimately will result in parties forgoing their claims out of an inability to secure counsel.

Consider *pro bono* cases where attorneys are not compensated or in impact-litigation contingency cases where attorneys are not guaranteed to receive a fee. In both types of cases, the client's only access to justice is

through the generosity of counsel or through counsel's willingness to accept the case's risk.

The Southern District of Florida offers a resource that connects indigent persons proceeding *pro se* with attorneys willing to assist. *See* Southern District of Florida, Volunteer Opportunities and Pro Bono Assistance (last accessed Feb. 27, 2023), available at https://www.flsd.uscourts.gov/available_cases. At the time of authoring this brief, it contains 95 separate cases. *See id*. Do all of those cases advance claims that are based on undisputed law, facts, and science? It is doubtful. What is undeniable, however, is that each of those individuals deserve counsel. What better deterrent is there to render aid, than the threat that pursuing the wrong claim could subject a well-intentioned attorney to bankrupting sanctions?

In the end, well-heeled clients and large law firms will not suffer significantly from an increased willingness to pursue attorneys for close calls such those presented in this case. However, small firms and less-wealthy clients will be chilled. The Court can avoid this outcome by reversing the district court's sanction order and setting bright-lined rules for impermissible conduct.

## Conclusion

Attorneys sometimes pursue frivolous cases, and when they do, they should be sanctioned. Here, Appellants did not engage in conduct worthy of sanctions, and if the district court's order is affirmed, it will chill reasonable cases and access to justice.

Date: March 1, 2023.

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza

*Attorney for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS,
## AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the word limit of FRAP 29(b)(4) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 2,580 words.

2.     This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Century Schoolbook font.

Date: March 1, 2023.          RANDAZZA LEGAL GROUP, PLLC

                              /s/ Marc J. Randazza
                              Marc J. Randazza
                              *Attorney for Amici Curiae*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

Date: March 1, 2023.

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza
*Attorneys for Amici Curiae*