No. 22-12687

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

JOEL B. ROTHMAN, CRAIG A. WIRTH, AND SRIPLAW, P.A.,

*Appellants*,

v.

A SHOC BEVERAGE, LLC, AND KEURIG DR. PEPPER, INC.,

*Appellees*.

On Appeal from the United States District Court
for the Southern District of Florida,
Case No. 9:21-cv-80740-DMM (Hon. Donald M. Middlebrooks, J.)

## BRIEF FOR APPELLEES

KEVIN C. KAPLAN
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive
Penthouse One
Miami, FL 33133
(305) 858-2900

HOWARD S. HOGAN
CHRISTOPHER F. KOPP
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 887-3640

*Counsel for Appellees*

*Joel B. Rothman, et al. v. A Shoc Beverage, LLC, et al.*, No. 22-12687

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendants-Appellees hereby state that the following individuals and entities have an interest in the outcome of this appeal:

A Shoc Beverage, LLC

Celsius Holdings, Inc.

Coffey Burlington, P.L. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

DeSantis, Carl – Shareholder of Celsius Holdings, Inc.

Dial, Avery A. – Counsel for Appellants

Hogan, Howard S. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaplan, Kevin C. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaufman Dolowich & Voluck, LLP – Counsel for Appellants

Keurig Dr. Pepper, Inc.

Kopp, Christopher F. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Milmoe, William H. – Shareholder of Celsius Holdings, Inc.

Rothman, Joel B. – Appellant

Schabert, Barbara R. – Counsel for Appellants

Shing, Li Ka – Shareholder of Celsius Holdings, Inc.

SRIPLAW, P.A. – Appellant

Teitelbaum, Meir – Counsel for Celsius Holdings, Inc.

*Joel B. Rothman, et al. v. A Shoc Beverage, LLC, et al.*, No. 22-12687

Wirth, Craig A. – Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that oral argument is unnecessary. This case presents straightforward legal issues that would not benefit from oral argument.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT (CIP) ......................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................... i

TABLE OF CONTENTS....................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF THE CASE...............................................................1

I.     Appellants' Pattern Of Vexatious Conduct In Underlying Litigation.............1

II.    A SHOC Moves For Reasonable Attorneys' Fees Against Celsius's
       Attorneys In Their Personal Capacity ..........................................11

III.   Court Awards A SHOC Its Reasonable Attorneys' And Expert Fees ..........15

STANDARD OF REVIEW ...................................................................16

SUMMARY OF ARGUMENT ..............................................................17

ARGUMENT ......................................................................................19

I.     The District Court's Order Sanctioning Counsel Was Well-Reasoned
       And Fully Supported By The Record...........................................19

       A.     The District Court's Order Clearly Identified Counsel's Bad
              Faith Conduct ..............................................................20

       B.     The District Court Did Not Abuse Its Discretion By
              Determining That Celsius's Counsel Engaged In Vexatious
              Conduct That Multiplied Proceedings ................................25

       C.     The Fee Award Was Directly Tied To Excess Proceedings
              Caused By Appellants' Bad Faith Conduct .........................30

II.    The District Court Did Not Violate Appellants' Constitutional Rights........33

III.   The Evidence Regarding The SEC Investigation Into Celsius Is
       Immaterial....................................................................35

IV.   A SHOC's Partial Rebranding Is Irrelevant ...................................................36

V.    Amicus's Arguments Do Not Support Reversal ...........................................36

CONCLUSION ..........................................................................................................38

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Access Now, Inc. v. Sw. Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004) ..........................................................21

\***Amlong & Amlong, P.A. v. Denny's Inc.*,
    500 F.3d 1230 (11th Cir. 2007) ......................................16, 17, 19, 26

*Apex Oil Co. v. Belcher Co. of N.Y.*,
    855 F.2d 1009 (2d Cir. 1988) ..........................................................28

*Austin v. United States*,
    509 U.S. 602 (1993)..........................................................................35

*Auto Owners Ins. Co. v. Summit Park Townhome Ass'n*,
    886 F.3d 863 (10th Cir. 2018) ........................................................34

*Avirgan v. Hull*,
    932 F.2d 1572 (11th Cir. 1991) ......................................................34

*Awad v. Cici Enterprises*,
    2006 U.S. Dist. LEXIS 85123, 2006 WL 4824477 (M.D. Fla.
    November 20, 2006) ..........................................................................8

*Breedlove v. Hardtford Life and Accident Insurance*,
    No. 6:11-cv-991-Orl-28GJK, 2012 WL 12905599 (M.D. Fla. June
    12, 2012) ............................................................................................5

*Eldredge v. ED Care Mgmt, Inc.*,
    766 F. App'x 901 (11th Cir. 2019) .................................................26

*Frey v. Town of Jackson*,
    41 F.4th 1223 (10th Cir. 2022) .................................................24, 26

*Johnson v. Florida*,
    348 F.3d 1334 (11th Cir. 2003) ......................................................29

*K'napp v. Adams*,
    No. 1:06—cv—01701—LJO—GSA—PC, 2014 U.S. Dist. LEXIS
    31535, 2014 WL 950353 (E.D. Cal. Mar. 11, 2014)..........................8

*Maiz v. Virani*,
    253 F.3d 641 (11th Cir. 2001) ............................................................17

*In re MGM Mirage Sec. Litig.*,
    No. 2:09-CV-1558-GMN, 2014 WL 6675732 (D. Nev. Nov. 25,
    2014) ...................................................................................................5

*New River Dry Dock, Inc. v. Falls at Marina Bay, L.P.*,
    No. 08-60216-CIV, 2008 WL 2620727 (S.D. Fla. June 30, 2008) ......4

***Norelus v. Denny's Inc.*,
    628 F. 3d 1270 (11th Cir. 2010) ..........................................17, 19, 20

*O'Rourke v. Dominion Voting Systems, Inc.*,
    No. 21-1442, 2022 WL 17588344 (10th Cir. Dec. 13, 2022) ...........34

*Oliva v. NBTY, Inc.*,
    583 F. App'x 877 (11th Cir. 2014) .....................................24, 29, 30

*Schwartz v. Million Air Inc.*,
    341 F.3d 1220 (11th Cir. 2003) ...........................................................17

*Sewell v. D'Alessandro & Woodyard, Inc.*,
    No. 2:07-cv-343-FtM-29SPC, 2011 U.S. Dist. LEXIS 28376
    (M.D. Fla. Mar. 8, 2011) .......................................................................8

*Silver Streak Trailer Company, LLC v. Thor Industries, Inc.*,
    No. 18- 14126-CIV-ROSENBERG/MAYNARD, 2018 W
    8367073 (S.D. Fla. Nov. 15, 2018) .......................................................5

*Steil v. Humana Kansas City, Inc.*,
    1197 F.R.D. 445 (D. Kan. 2000) ...........................................................5

*Switch Commc'ns Grp. v. Ballard*,
    No. 2:11-CV-00285-KJD, 2011 WL 3957434 (D. Nev. Sept. 7,
    2011) .....................................................................................................5

*Thomas v. Tenneco Packaging Co.*,
    293 F.3d 1306 (11th Cir. 2002) ...........................................................34

*U.S. v. Nat'l Steel Corp.*,
    26 F.R.D. 607 (S.D. Tex. 1960) .............................................................8

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ..................................................................16, 17

*Winfield v. St. Joe Paper. Company*,
  1977 WL 15327 (N.D. Fla. Nov. 10, 1977)..........................................................5

*Wynn Las Vegas v. Zoggolis*,
  No. 14–cv–157– MMD–VCF, 2014 WL 2772241, (D. Nev. June
  17, 2014) ..............................................................................................................5

*Young Apartments, Inc. v. Town of Jupiter, Fla.*,
  503 F. App'x 711 (11th Cir. 2013) ....................................................................26

**Rules**

Fed. R. Civ. P. 33(a)...................................................................................................5

Fed. R. Civ. P. 34(b)(1)(A) .........................................................................................8

The district court, after a hearing on the record, sanctioned Appellants Joel B. Rothman, Craig Wirth, and SRIPLAW ("Appellants"), counsel for the Plaintiff Celsius Holdings, Inc. ("Celsius") in the underlying matter, based on bad faith conduct throughout the district court litigation, in the amount of $249,357.50 (more than $100,000 less than the cost incurred by Appellees A SHOC Beverage LLC and Keurig Dr. Pepper Inc. ("Defendants") litigating the case). The trial court's sanction Order, DE 66, was fully supported by the record and was not an abuse of discretion. This Court should affirm.

## STATEMENT OF THE CASE

## I.     Appellants' Pattern Of Vexatious Conduct In Underlying Litigation

As the trial court found in its Order imposing sanctions, Appellants' contumacious conduct in the underlying litigation was "extraordinary," DE 66 at 3, evinced a "flagrant disregard" for the rules of federal litigation, *id.* at 4, and fully justified the imposition of sanctions in the amount awarded by the trial court.

Celsius, acting through Appellants, brought this case in bad faith seeking damages and broad injunctive relief in order to prevent competition from a popular energy drink based on legal theories that have been soundly rejected by courts in the Eleventh Circuit and around the country. Appellants filed a nine-count complaint raising a variety of claims under state and federal law against Defendants, the crux

1

of which was that (1) A SHOC's Accelerator product falsely claimed that it "accelerates metabolism" and is "thermogenic" and (2) that the appearance of the A SHOC Accelerator product was confusingly similar to Celsius's alleged trade dress. DE 1 ¶¶ 30-36, 44-57.

As the trial court found, Celsius's false advertising claims were directly contradicted by its own studies—incorporated by reference into the Complaint—showing that caffeine (the primary active ingredient in both Celsius and A SHOC Accelerator) accelerated metabolism and caused thermogenesis. *See* DE 66 at 4-7; DE 27 at 8-9 (motion to dismiss summarizing scientific evidence); DE 28-1, 28-2, 28-3 (scientific studies). Celsius also claimed that Defendants' products infringed its trade dress (a species of trademark law) by citing to ubiquitous conventions, such as choosing a color scheme that communicates the beverage's flavor, or indicators that the product contains "zero sugar" or "0 SUGAR." *See* DE 1 ¶¶ 38, 44. These common functional conventions cannot be claimed as source identifying by any one company. DE 66 at 7 (conventions were "not protectible trade dress").

The baseless nature of the claims was underlined by Celsius's inability to provide any evidence or support throughout the district court proceedings. Defendants engaged in discovery while the motion to dismiss was pending, in keeping with the detailed scheduling orders that the Court issued on May 5 and 11, 2021. DE 11,

20.  Defendants adhered to these orders and produced documents in response to Celsius's requests for production.  A SHOC also produced timely expert reports.  *See* DE 54-2 Ex. A (Expert Report of Richard B. Kreider), Ex. B (Expert Report of Ronald C. Goodstein), Ex. C. (Expert Report of Andrew C. Bernstein).  One of these reports, by the Director of the Exercise & Sport Nutrition Lab and Human Clinical Research Facility at Texas A&M University, carefully evaluated the studies cited by Plaintiffs, as well as "well-known" research over "decades" into the physiological effects of caffeine.  DE 54-2, Ex. A at 11-12.  He opined that decades of research clearly supports Defendants' statement that caffeine accelerates metabolism and causes thermogenesis, and that many competing products make similar claims even though they are sold as beverages and not regulated by the FDA.  *See id.* at 11-15.  A SHOC also commissioned a scientific likelihood-of-confusion survey by a leading marketing professor at Georgetown University using the methodology that is widely considered the gold standard by courts.  *See* DE 54-2, Ex. B.  The survey found no likelihood of confusion between the parties' cans.  *See id.* at 4-5.  And a third expert report was forced to evaluate Celsius's claim for damages, even with the handicap that Plaintiff had not participated in discovery or produced any evidence of harm. *See* DE 54-2, Ex. C.

Celsius, acting through Appellants, refused to participate in discovery in any meaningful way or to prosecute its claims, instead pursuing a strategy of repeated

obstruction of discovery.  *See* DE 34-2 (Celsius's Response to Request for Production) (passim); DE 35-3 (Celsius's Response to Request for Admission) (passim); DE 35-4 (Celsius's Response to Interrogatories) (passim).  Celsius refused to respond to ***a single one*** of A SHOC's standard interrogatories, many of which simply asked Celsius to provide support for the allegations included in its own Complaint. DE 35-4 (passim).

As just one illustrative example, Celsius refused to answer the following interrogatory seeking the "factual basis" for the key element of its trade dress claim, the allegation that A SHOC's can could create a likelihood of confusion (reproduced from DE 35-4 at 4-5):

> **Interrogatory No. 3:**
>
> Describe in detail the factual basis for and identify all evidence concerning Celsius's allegation at paragraphs 45-47 of the Complaint that the A SHOC Accelerator can "has caused actual consumer confusion" with Celsius products.

Appellants' pattern—for all interrogatories—was to repeat lengthy boilerplate substance-free objections, and then refuse to answer, as shown below (reproduced from DE 35-4 at 4-5):

> **ANSWER:**
> **Celsius objects because the interrogatory is implicitly compound in that Defendants are asking for Celsius to identify all evidence concerning allegations in paragraphs 45-47 of the Complaint. Each of which count against the twenty-five interrogatory limited stated in Fed. R. Civ. P. 33(a)(1). *See New River Dry Dock, Inc. v. Falls at Marina Bay, L.P.*, No. 08-60216-CIV, 2008 WL 2620727 at \*3 (S.D.**

Fla. June 30, 2008)("[w]ithout leave of the court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts...." (citing Fed. R. Civ. P. 33(a)); *Breedlove v. Hardtford Life and Accident Insurance*, No. 6:11-cv-991-Orl-28GJK, 2012 WL 12905599 at *3 (M.D. Fla. June 12, 2012) (Interrogatories should be brief, simple, particularized, unambiguous, and capable of being understood by jurors when read in conjunction with the answer) (citing Middle District Discovery Handbook (2001) at 15, IV.A.3).

Celsius also objects because this interrogatory is asking for a legal conclusion. Actual consumer confusion is a legal conclusion and it is not proper for Celsius to answer. *See Silver Streak Trailer Company, LLC v. Thor Industries, Inc.*, No. 18- 14126-CIV-ROSENBERG/MAYNARD, 2018 W 8367073 at *5 (S.D. Fla. Nov. 15, 2018)("Interrogatories should not be used as a device for compelling the interrogated party to prepare the interrogator's case for him.")(quoting *Winfield v. St. Joe Paper. Company*, 1977 WL 15327 at *1 (N.D. Fla. Nov. 10, 1977).

The interrogatory is also facially oppressive and unduly burdensome in seeking to require a detailed listing or description of facts in support of contentions. A request seeking "all facts" and "all information related to each and every allegation" is facially burdensome. *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-1558-GMN, 2014 WL 6675732, at *5 (D. Nev. Nov. 25, 2014); *Wynn Las Vegas v. Zoggolis*, No. 14–cv–157–MMD–VCF, 2014 WL 2772241, at *3 (D. Nev. June 17, 2014); *Switch Commc'ns Grp. v. Ballard,* No. 2:11-CV-00285-KJD, 2011 WL 3957434, at *8 (D. Nev. Sept. 7, 2011) (quoting *Steil v. Humana Kansas City, Inc.,* 1197 F.R.D. 445, 447 (D. Kan. 2000) "*Steal* [SIC] states that an interrogatory may reasonably ask for the material or principal facts which support a party's contentions. However, 'to require specifically 'each and every' fact and application of law to fact … would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details.'").

Similarly, Appellants unnecessarily multiplied the number of facts that would need to be established through discovery and at trial by refusing to answer Requests for Admissions as to basic facts, such as the indisputable appearances of competing products. *See, e.g.*, DE 35-3 at 2-3. For example, they refused to answer whether "the following image accurately depicts a can of Rowdy Energy as it currently appears in the marketplace":



Even more remarkably, Appellants actually denied Requests for Admission that asked them to admit that the studies cited in the Complaint included certain phrases, even though those phrases plainly appeared on the face of the studies (DE 35-3 at 197):

> 169. Admit that a link to the following scientific study appears on Celsius's website: Vincent Dalbo et al., Acute effects of ingesting a commercial thermogenic drink on changes in energy expenditure and markers of lipolysis, 5 J. OF INT'L SOC'Y OF SPORTS NUTRITION 6 (2008).
>
> **Admitted.**

170. Admit that the study referred to in Request No. 169 says that "caffeine increases energy metabolism."

**Deny.**

Here is the precise language highlighted as it appears on page 4 of Celsius's study

(DE 54-2, Ex. F):

> Of the active ingredients, caffeine and epigallocatechin gallate (EGCG, an abundant catechin in green tea) [24] are the most common and have been found to increase energy expenditure [8,10,11,25-29] and increase markers of lipolysis [8-11]. In this regard, caffeine increases energy metabolism through stimulation of β-adrenergic receptors and adenyl cyclase resulting in activation of cyclic AMP (cAMP), causing subsequent increases in circulating epinephrine [30,31] and free fatty acids [32]. Caffeine may also enhance lipolysis by inhibiting nucleotide phosphodiesterase resulting in increased tissue concentrations of cAMP and activation of hormone-sensitive lipase, which provides further explanation for the increased circulating levels of free fatty acids seen in the present study [12].

Celsius, acting through Appellants, refused to produce ***any documents*** in response to Defendants' requests for production, many of which simply asked for documents supporting the allegations included in Celsius's Complaint. *See* DE 34-2 at 70 (asserting multiple objections, including relevancy, to the request that Celsius produce "documents Celsius contends supports its claims against A SHOC"). The following example, taken from DE 34-2 at 33-34, is again illustrative, as it was addressed to an element that Celsius was required to prove to establish its trade dress claim:

38. All documents concerning Celsius's allegation at paragraphs 48 and 53 of the Complaint that Celsius's alleged trade dress is "non-functional."

**RESPONSE: Objection. Celsius objects because "all documents concerning Celsius's allegation at paragraphs 48 and 53 of the Complaint that Celsius's alleged trade dress is 'non-functional'" is overly broad, vague, and ambiguous in failing to describe with requisite particularity the items sought to be produced. Rule 34 requires requests for production to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A); *see Awad v. Cici Enterprises,* 2006 U.S. Dist. LEXIS 85123, 2006 WL 4824477, \*1 n. 1 (M.D. Fla. November 20, 2006)("A request for 'all documents and records' that relate to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for Plaintiff's identification and production of responsive documents." *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-FtM-29SPC, 2011 U.S. Dist. LEXIS 28376, at \*6 (M.D. Fla. Mar. 8, 2011); *K'napp v. Adams*, No. 1:06—cv—01701—LJO—GSA—PC, 2014 U.S. Dist. LEXIS 31535, 2014 WL 950353, at \*6 (E.D. Cal. Mar. 11, 2014) (denying request for production of "all documents related to Defendants' affirmative defenses" for failure to comply with Rule 34's particularity requirements). "The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required." *U.S. v. Nat'l Steel Corp.*, 26 F.R.D. 607, 610 (S.D. Tex. 1960). The portion of the request quoted above fails to comply with the particularity standard in Fed. R. Civ. P 34(b)(1)(A) and requires Celsius to comb through all documents within its custody and control and make a subjective judgment as to the evidentiary or impact of each and every document in order to respond. This is beyond the capability of a man of ordinary intelligence and, as a result, Celsius is unable to respond.**

**The request is also overly broad and not relevant to the extent it seeks documents and things with no time frame. The request is also not relevant to the extent it seeks documents and things that have no bearing on the unsupported structure-function claims for the A SHOC Accelerator product.**

**Celsius also objects because this request calls for a legal conclusion. "Non-functional" is a legal conclusion and Celsius is unable to determine what documents are being asked for in this request.**

**This request calls for documents and things that are protected by the attorney-client privilege, work product doctrine, and/or any other privilege, immunity, or protection afforded by law inasmuch as all such documents that are responsive to this request that predate the filing of this action are privileged.**

In fact, in an attempt to avoid providing any real discovery, Celsius changed position mid-stream and abandoned the central (and repeated) allegation of its false advertising claim, that A SHOC's claims that its product "accelerates metabolism" and is "thermogenic" are supposedly false. *See* DE 1 ¶¶ 32, 33, 34, 35, 60, 111.

Appellants claimed (incredibly) that A SHOC somehow "mischaracterize[d]" the Complaint, as shown in the image below from DE 35-4 at 10:

10. Describe in detail the factual basis for and identify all evidence that supports the proposition the A SHOC ACCELERATOR product is not "THERMOGENIC."

**ANSWER:**

**Celsius objects because Defendants mischaracterize Celsius's allegation made in the Complaint. The allegation in the Complaint is that "A SHOC and KDP lack any reasonable basis to make the claims for A SHOC ACCELERATOR that the product "ACCELERATES METABOLSIM" or is "THERMOGENIC" and that "A SHOC and KDP lack competent and reliable scientific evidence to support the claims for A SHOC ACCELERATOR that the product "ACCELERATES METABOLISM" or is "THERMOGENIC." (Complaint ¶¶ 32-33). The factual predicate for this question is therefore inconsistent with and different from the allegations in the Complaint. The question is not relevant because Celsius has not al-**

**leged that A SHOC ACCELERATOR product is not "THERMO-GENIC" but rather A SHOC and KDP lack substantiation to support its claim.**

A SHOC's interrogatory was based on Celsius's allegation, clearly articulated throughout its complaint, that "[t]hese false and misleading statements purposefully misrepresent the nature, characteristics, or qualities of A SHOC's products, including but not limited to A SHOC's claims that its A SHOC ACCELERATOR products are 'thermogenic' and 'accelerates metabolism,' when in fact they do not." DE 1 ¶ 111.

Appellants' conduct with respect to expert discovery was in the same vein. Pursuant to the trial court's Pretrial Scheduling Order, Celsius was obligated to "furnish opposing counsel with expert reports or summaries of its expert witnesses' anticipated testimony in accordance with Fed. R. Civ. P. 26(a)(2)" by August 9, 2021. DE No. 20 at 5. Celsius, acting through its counsel, disregarded the Court's expert disclosure deadline, and tried to cover for its failure by providing summaries of proposed expert reports that indisputably failed to provide the required information. *See* DE 39-5 (Marketlab statement of work); DE 39-8 (Lockwood statement); DE 49 at 3-4 (detailing the elements not provided). Incredibly, Celsius's supposed expert disclosure merely "propose[d] to do the actual survey work on which" it wanted its proffered survey expert to testify. DE 47 at 4.

10

As a result, A SHOC filed two motions to compel discovery, *see* DE 34 & 35, and a motion to exclude its experts, *see* DE 39.  Appellants failed to offer any remotely plausible justification for its objections and refusal to comply with Defendants' discovery requests, and did not even respond to A SHOC's Motion to Compel Production of Documents.  *See* DE 45 at 1 (noting that Celsius did not oppose Defendant's motion to compel production).  Without notice or warning, Celsius voluntarily dismissed this case on September 14, 2021, shortly before the court hearing on the discovery motions, apparently in the misplaced hope that its action would avoid having to pay the consequences of its earlier positions.

## II.    A SHOC Moves For Reasonable Attorneys' Fees Against Celsius's Attorneys In Their Personal Capacity

After Celsius voluntarily dismissed its case, Defendants moved for sanctions against Appellants in their personal capacity as counsel for Celsius under 28 U.S.C. § 1927, titled "Counsel's Liability For Excessive Costs," which provides in full:

> ***Any attorney*** or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court ***to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred*** because of such conduct.

28 U.S.C. § 1927 (emphasis added).  As Defendants spelled out, "Title 28, Section 1927 provides that ***any attorney*** who so 'multiplies court proceedings unreasonably and vexatiously' may be required by the court to satisfy ***personally*** the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  DE 54

11

at 11 (emphasis added). Defendants further argued that "[s]anctions are warranted where *an attorney* 'knowingly or recklessly pursue[s] a frivolous claim,' or where 'the *attorney's conduct* is so egregious that it is tantamount to bad faith.'" *Id.* (emphasis added). A SHOC argued that Celsius's attorneys were personally liable for certain excess costs that A SHOC incurred, because Celsius's complaint was based on legal theories that had been squarely rejected by courts around the country and because they had flagrantly abused the discovery process. *Id.* at 11-18.

In response, Appellants chose to take the sweeping (although factually unsupported) position that no sanctions would be appropriate at all. DE 57 at 11 (arguing neither Celsius nor its counsel engaged in bad faith conduct). Appellants offered no attempted defense based on any conduct or direction from their client, Celsius. DE 57 (opposition to motion for sanctions) (passim). Its brief opposing the motion for sanctions acknowledged that counsel could be found liable for excessive costs under section 1927, but argued that "neither Celsius *nor its counsel* are vexatious litigants and there is no basis for the imposition of sanctions." *Id.* at 10 (emphasis added; capitalization altered); *see also* DE 82-1 (hearing transcript) at 36 (acknowledging that "the 1927 motion accuses me personally of vexatious conduct"). At no point during the underlying litigation did Appellants put forth any evidence or argument that Celsius (as opposed to Celsius's counsel) should be responsible for the bad faith conduct at issue. *See* DE 57 (passim); DE 82-1 (passim).

12

In the motion for sanctions, Defendants sought only reasonable attorneys' fees that were directly tied to Appellants' bad faith conduct. It did not seek any fees incurred prior to fully briefing its motion to dismiss, at which time it should have been plain to Appellants that the legal claims were frivolous. DE 54-1 ¶ 13 (Hogan Declaration) (seeking fees for "the period from the date Defendants filed a Reply in support of its Motion to Dismiss, June 25, 2021, through September 14, 2021"). It lowered the rates of certain Washington D.C.-based attorneys to reflect customary Miami rates. *Id.* ¶ 17 ("The hourly rates claimed in this fee application represent a significant discount—ranging from 30% to 56% depending on the timekeeper—from the rate that was actually charged the client and which is the firm's customary rate."). And A SHOC excluded fees incurred as a result of internal calls, or where more than one attorney attended a conference. *Id.* ¶ 17 ("Defendants are also not seeking to recover for time billed by Gibson Dunn attorneys attending internal conferences, or time during which multiple attorneys were on a single call.").

Prior to filing the motion for sanctions, Defendants provided Appellants with a detailed accounting of the fees that it sought. DE 54-1 ¶ 36. The local meet and confer rule required Appellants to "describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects." S.D. Fla. Local R. 7.3(b). Appellants refused to do so, *see* DE 54-1 ¶ 36 ("We never received a written response to the draft motion in compliance with local rule 7.3(b)"), again making

the deliberate strategic decision to contest whether fees should be imposed at all. Rather than attempt to detail which fees should not be attributed to their conduct, Appellants' response to A SHOC's motion for sanctions argued that the meet-and-confer rule should not apply because "there was no legal justification for any of the fees and expenses under any rule or statute," and the rule should not be read to "require Celsius to put pen to paper about each and every one of A SHOC's lawyers' and experts' fee entries disputing entitlement and the whole amount over and over again ad nauseum where no legal basis for the imposition of fees or sanctions exists in the first place." DE 57 at 15. At no point prior to this appeal did Appellants argue that specific fees were not attributable to the conduct that the district court found to be sanctionable. *See* DE 57 (passim); DE 82-1 (passim).

The district court held a hearing on the record, during which it provided Appellants the opportunity to present any evidence that they saw fit. DE 82-1. No justification for either continuing to pursue the claims after it became clear that Celsius's legal theories were unsupported, nor of the obstruction of discovery, was provided to the district court. *Id.* (passim); DE 66 at 7 ("Plaintiff has failed to offer any justification" for its litigation conduct).

### III.   Court Awards A SHOC Its Reasonable Attorneys' And Expert Fees

The district court sanctioned Celsius's counsel and awarded fees in a detailed and well-reasoned opinion.[1] DE 66 (Court Order).  The court found that the "weakness of Plaintiff's claims, combined with its conduct throughout the discovery process, rise to the level of bad faith." *Id.* at 5.  The court detailed at length the "fatal flaws in Plaintiff's case," which it found "should have been apparent at least from the date on which Defendants filed their motion to dismiss." *Id.* at 5.  More importantly, it laid out in detail precisely why the Appellants' conduct throughout litigation was sanctionable. *Id.* at 4-7.  As the district court explained, Appellants "flagrantly disregarded the discovery process by refusing to meaningfully participate in discovery, serving boilerplate objections to even the most straightforward discovery requests, and repeatedly failing to comply with this Court's deadlines." *Id.* at 4.  Plaintiff, through its attorneys, "responded to almost every request for inspection and production with a lengthy, generic, substance-free objection that the request was broad and vague," and "failed to answer Requests for Admission as to basic, undisputable facts, such as the appearances of competing products or what certain documents say." *Id.* at 4.  Appellants "failed to offer any justification for its failure to

---

[1]  The Court also converted the voluntary dismissal to a dismissal with prejudice, a determination that is not before this Court on appeal.

meaningfully participate in discovery, which caused [A SHOC] to file multiple discovery motions, unnecessarily and vexatiously multiplying litigation and driving up Defendants' attorneys' fees." *Id.* at 7. The district court found that Appellants "did not meaningfully participate in the discovery process," and, at the tail end of discovery, "had not produced a single document, answered a single interrogatory, or produced any evidence supporting its allegations." *Id.* at 7.

The court carefully scrutinized A SHOC's fee submission. *Id.* at 9. It reviewed the "detailed billing records submitted by the Defendants" and concluded "that the attorneys at Coffey Burlington and Gibson Dunn exercised sound billing judgment." *Id*. The court also evaluated the reasonableness of the attorneys' rates, noting in particular that the "rates of the Gibson Dunn attorneys have been discounted 30-56% . . . from the firm's customary rate actually charged to the client," and that the overall fee amount was reasonable. *Id*. at 9 & n. 4.

## STANDARD OF REVIEW

This Court reviews a district court's award of attorneys' and expert fees under 28 U.S.C. § 1927 for abuse of discretion. *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1237 (11th Cir. 2007). "The application of an abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). "[W]hen employing an abuse-of-discretion standard," the Court must affirm unless it finds

16

"that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 662 (11th Cir. 2001)).

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in ordering Appellants to pay Defendants' reasonable attorneys' and expert's fees. Under the governing abuse of discretion standard, *Norelus v. Denny's Inc.*, 628 F. 3d 1270, 1280 (11th Cir. 2010), and the objective standard applied for bad faith, *id*. at 1282, the trial court correctly found that the baseless claims filed by Appellants against Celsius's competitor were objectively unreasonable and in bad faith, as a transparent attempt by a well-heeled, publicly held corporation to try to drive a competing product from the market. Further, as the trial court also found, Appellants' obstructionist discovery positions were also taken in bad faith. DE 66 at 4-7. Both the pursuit of baseless claims and vexatious litigation of any claims (whether or not originally frivolous) have been found to warrant sanctions under 28 USC § 1927. *Amlong*, 500 F.3d at 1242 (quoting *Schwartz v. Million Air Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("A determination of bad faith is warranted where an attorney knowingly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims")). The record supports the district court's findings of both types of bad faith here, and none of Appellants' arguments for reversal come close to a showing of abuse of discretion.

17

*First*, Appellants argue that the district court's order "lacks any findings about the conduct of counsel whatsoever," and attempts to draw a distinction between "conduct of counsel for Celsius as opposed to the conduct of Celsius *through counsel*." Br. at 37; *id.* at 38, 42-43. This argument ignores the clear terms of the district court's order and the undisputable fact that every instance of bad faith found by the trial court is Appellants' responsibility. Further, Appellants waived any contrary argument by not making it before the district court.

*Second*, Appellants' argument that there was no bad faith simply ignores the district court's detailed explanation of precisely why sanctions were imposed. Courts properly sanction attorneys for pursuing unsupported or facially frivolous legal theories, and for multiplying proceedings by engaging in discovery abuses— the precise conduct that the district court found sanctionable here.

*Third*, there is no basis for an attack on the amount of the sanction, which was fully supported by evidence before the trial court. Given that the entire claim was baseless, the entire amount of fees and expert costs incurred by Defendants (more than $350,000) could have been awarded, and the trial court's award of more than $100,000 less than this amount was not an abuse of discretion. Again, in the trial court, Appellants offered no evidence of "apportionment" which might mandate a different amount than that awarded by the district court.

18

*Finally*, Appellants' constitutional claims are wholly without merit. There is no constitutional or other right to litigate in bad faith. Appellants had both notice and an opportunity to be heard before the district court on the governing bad faith issue. It was Appellants' choice what evidence (in their written response or at the hearing before the trial court) to present in response to Defendants' motion for sanctions. Their failure to present a justification for their actions or evidence of good faith is a reason to affirm the trial court, and not to find an imaginary constitutional infirmity in the trial court's ruling.

## ARGUMENT

## I.    The District Court's Order Sanctioning Counsel Was Well-Reasoned And Fully Supported By The Record

Title 28, Section 1927 provides that any attorney who so "multiplies court proceedings unreasonably and vexatiously" may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Sanctions are warranted where an attorney "knowingly or recklessly pursue[s] a frivolous claim," or where "the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong*, 500 F.3d at 1239, 1241-42 (emphasis and quotation marks omitted); *Norelus*, 628 F.3d at 1282. Appellants' conduct in this case is a textbook example of proceedings that have been multiplied "unreasonably and vexatiously." As the district court found, Appellants brought

claims with no basis in law or fact and dragged out discovery with frivolous objections. DE 66 at 4-7. They willfully disregarded the court's scheduling order, finally withdrawing their client's claims only to avoid appearing before the district court to justify their conduct. *Id.* The district court's order awarding sanctions was not an abuse of discretion.

Appellants do not dispute the key basis for the trial court's finding of bad faith—that Celsius's claims were legally baseless and factually unsupported from the start, and that Appellants' obstruction of discovery was beyond the pale. Nor do Appellants deny that their actions cost Defendants more than the $249,000 awarded by the trial court, as shown in billings records as to which no issue of authenticity was ever raised. Consequently, Appellants do not even attempt to show that the district court's order was outside the range of permissible rulings on the facts before the Court, and the district court's order should simply be AFFIRMED. Appellants' subsidiary arguments, which we go on to address, all are wholly unpersuasive.

### A.   The District Court's Order Clearly Identified Counsel's Bad Faith Conduct

Appellants' first two arguments for reversal are essentially one and the same: the district court did not distinguish between counsel's conduct, and the conduct of Celsius, the client. Br. at 37-38, 42-43. The only support that they point to for this novel argument is the district court's use of "Celsius" or "Plaintiff" throughout its order, apparently positing that because the district court did not identify counsel by

20

name, that it did not adequately identify counsel's bad faith conduct. *See id.* at 34 ("[T]he order doesn't even mention former counsel until the conclusion on page ten when it entered sanctions 'against Plaintiff's counsel.'"); *id.* at 37 ("Counsel for Celsius is never even mentioned until the conclusion of the order."); *id.* at 38 ("The order on appeal speaks exclusively about plaintiff (*i.e.,* Celsius) not plaintiff's counsel. Plaintiff's counsel is Celsius' legal representative. Plaintiff's counsel is not Celsius. The district court made no distinction between the two.").

Any argument that Celsius (the client) was responsible for any of the bad faith conduct in the underlying litigation has been waived. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered in this court." (quotation marks omitted)). At no point before this appeal did Appellants argue that Celsius was responsible, in any way, for counsel's actions. *See* DE 57 (response to motion for sanctions) (passim); DE 82-1 (hearing transcript) (passim). They did not make this argument in opposition to A SHOC's motion for sanctions, instead choosing to argue that there was no vexatious litigation conduct by anyone. *See* DE 57 (passim). Nor did they present any evidence at the sanctions hearing that the client was responsible for any of counsel's conduct. *See* DE 82-1 (passim). Appellants essentially fault the district court for not *sua sponte* drawing a distinction that Celsius's counsel never raised or provided

any evidence to support. If Appellants believed that Celsius, as opposed to their firm, should be held responsible for advancing frivolous legal positions and failing to participate in discovery, it was incumbent upon Appellants to raise and argue that point. They failed to do so. (Of course, whether Appellants are entitled to indemnification from Celsius is a separate issue not before the Court.)

In any event, Appellants' argument that the district court failed to identify any conduct undertaken by counsel has it exactly backwards. The district court identified conduct that was undertaken *exclusively* by counsel. The district court sanctioned Celsius's counsel because they pursued frivolous legal claims, and utterly failed to participate in discovery or produce any evidence supporting its own claims, thereby necessitating multiple, expensive discovery motions. DE 66 at 4-7. *All of that conduct was undertaken by counsel.* Appellants signed the complaint (*see* DE 1 at 31), signed all of the discovery papers (*see* DE 34-2 at 78; DE 35-3 at 200; DE 35-4 at 13), submitted deficient "expert reports," (*see* DE 39-5; DE 39-8) and refused to submit any evidence supporting their client's legal claims or to abide by basic rules of discovery. DE 66 at 4-7.

There is no evidence, and Appellants did not argue to the district court, that any of the contumacious conduct identified by the district court was caused by Celsius's actions, or that fees should be apportioned to anyone other than Appellants. *See* DE 57 (passim); DE 82-1 (passim). None of the conduct identified by the district

court was undertaken by Celsius, except through counsel. Indeed, neither Defendants nor the district court have had *any* interaction with Celsius, except through Appellants. This is not a case where an attorney is being sanctioned for a client's conduct—for example, destruction of evidence or refusal to attend a deposition—over which the attorney had limited control. *All* of the bad faith conduct was undertaken *directly* by Celsius's attorneys.

Finally, Appellants' attempt to draw a distinction between the "conduct of counsel for Celsius as opposed to the conduct of Celsius *through counsel*," Br. at 37, strains credulity. Appellants, in a remarkable show of chutzpah, even go so far as to complain that the district court's order "says nothing about former counsel for Celsius being at fault," *id.* at 43, apparently contending that they are not responsible for their own conduct. Florida's ethical rules make clear that *attorneys* are responsible for exactly the sort of actions that the district court found to be sanctionable.[2] Appellants identify no case—and we are aware of none—supporting the point that an

---

[2] *See* R. Regulating Fla. Bar 4-3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."); 4-3.4(d) ("A lawyer must not … intentionally fail to comply with a legally proper discovery request by an opposing party.") available at https://www-media.floridabar.org/uploads/2022/12/2022_06-DEC-RRTFB-12-2-2022-1.pdf.

The Florida Bar's Guidelines for regulating professionalism include similar requirements on lawyers. *See* Guideline for Professional Conduct (G)(2) ("Document

attorney's bad faith conduct is somehow excused if done at the direction of a client. If that were the rule, courts could only sanction attorneys under 28 U.S.C. § 1927 if they determine that the attorney, in essence, went rogue, and engaged in objectively unreasonably conduct that was independent of their representation of their client. No court to our knowledge has ever drawn that distinction and, in fact, courts routinely sanction attorneys without distinguishing between an attorney's independent conduct and the conduct of the client through counsel. *See, e.g.*, *Oliva v. NBTY, Inc.*, 583 F. App'x 877, 881-82 (11th Cir. 2014) (sanctions proper under § 1927 based on filing of motion to strike, motion to permit punitive damages, and motion to present spoliation evidence"); *Frey v. Town of Jackson*, 41 F.4th 1223, 1245 (10th Cir. 2022) (sanctions proper under § 1927 based on Plaintiff's counsel's filing of a frivolous amended complaint). The trial court's findings of bad faith are more than sufficient to support the relief awarded.

---

production should not be delayed to prevent opposing counsel from inspecting documents before scheduled depositions or for any other tactical reason."); (G)(8) ("Objections to the document demands should be based on a good faith belief and not be made for the purpose of withholding relevant information. If a document demand is objectionable only in part, the unobjectionable documents should be produced."); (H)(2) ("Objections to interrogatories should be based on a good faith belief and not be made for the purpose of withholding relevant information. If an interrogatory is objectionable only in part, the unobjectionable portion should be answered."), available at https://www.floridabar.org/prof/regulating-professionalism/presources002/.

**B.    The District Court Did Not Abuse Its Discretion By Determining That Celsius's Counsel Engaged In Vexatious Conduct That Multiplied Proceedings**

Appellants do not seriously dispute, in anything more than the most cursory way, that the district court's findings were clearly erroneous or that the district court abused its discretion by imposing sanctions.  Nor could they.  The district court laid out a pattern of conduct that was supported by the record and clearly supports a bad faith finding: (A) Celsius's claims were flatly refuted by scientific studies that Celsius cited in its own complaint, and were "directly undercut by well-established research," (DE 66 at 6); (B) the "FDCA claims were not legally cognizable" based on clear caselaw (*id*.); (C) the trade dress claims were "premised on standard conventions" and were "not protectible trade dress," and Appellants should have known as much no later than when Defendants filed their motion to dismiss (*id*. at 7); (D) Appellants continued to pursue their client's claims even after it was apparent that they were baseless (*id*. at 5); (E) Celsius "had not produced a single document, answered a single interrogatory, or produced any evidence supporting its allegations," (*id*. at 7); (F) Appellants "flagrantly disregarded the discovery process by refusing to meaningfully participate in discovery, serving boilerplate objections to even the most straightforward discovery requests," and "repeatedly fail[ed] to comply with [the district court's] deadlines" (*id*. at 4); and (G) Appellants refused "to answer

25

Requests for Admission as to basic, undisputable facts, such as the appearances of competing products or what certain documents say" (*id*. at 4-5).

Courts routinely sanction attorneys for engaging in similar conduct. *See, e.g.*, *Amlong*, 500 F.3d at 1242 (sanctions proper when an attorney "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims."); *Eldredge v. ED Care Mgmt., Inc.*, 766 F. App'x 901, 908 (11th Cir. 2019) (per curiam) (district court did not abuse discretion when "firm engaged in a pattern of unreasonable and vexatious conduct . . . that needlessly obstructed the litigation and multiplied the proceedings"); *Frey*, 41 F.4th at 1245 (affirming sanctions and finding that "[c]ontinuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927."); *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 503 F. App'x 711, 728 (11th Cir. 2013) (per curiam) (Section "1927 awards fees against counsel for that counsel's bad faith conduct, such as pursuit of a baseless claim knowing no evidence supported it.").

In response, Appellants argue that the "weakness of Plaintiff's claims . . . cannot be considered under § 1927." Br. at 44; *id.* at 45 ("Flawed lawsuits and arguments are not sanctionable conduct under § 1927."). Appellants do not actually contend that the legal claims they promoted had any merit (either in their subjective opinion or objectively). As this Court has held and as the district court explained,

sanctions are warranted because Appellants "knowingly or recklessly pursue[d] frivolous claims" after it should have been apparent that the claims had no factual or legal basis, needlessly dragged out discovery with frivolous objections, flagrantly violated the discovery rules, and ignored the district court's scheduling order. DE 66 at 4-6. Indeed, A SHOC only sought an award of fees that were incurred following the completion of briefing of its motion to dismiss, at which point, as the district court recognized, the "fatal flaws in Plaintiffs case should have been apparent." *Id.* at 5; DE 54-1 ¶ 13.

Appellants next argue that, setting aside the weak legal theories, the record does not establish that Appellants acted in bad faith. Br. at 44-45. Aside from citing the legal standard, the sum total of Appellants' argument that the record does not support a bad faith finding is the naked assertion that "[t]here was no objective evidence of bad faith" and that "[t]he district court's conclusory statement about bad faith was unsupported by any facts." *Id.* at 46. The district court detailed precisely what actions constituted vexatious conduct, as outlined above. DE 66 at 4-7. Appellants engaged in a clear pattern of conduct that flouted basic professional obligations and fully supported an award of attorneys' fees. *Id.*

Appellants' contention that their conduct did not multiply proceedings fares no better. Br. at 46-47. The district court found that Appellants' "failure to mean-

27

ingfully participate in discovery" directly "caused [A SHOC] to file multiple discovery motions, unnecessarily and vexatiously multiplying litigation and driving up [A SHOC's] attorneys' fees." DE 66 at 7. Furthermore, the district court found that Appellants continued to pursue frivolous legal claims well after it should have been apparent that the claims had no merit, thereby unnecessarily driving up A SHOC's fees. *Id.* at 5. Both of these determinations were amply supported by the record.

Appellants do not seriously argue that the district court's factual finding that their conduct needlessly prolonged litigation and caused Defendants to file multiple motions was clear error, instead claiming that "discovery disputes are not sanctionable conduct under § 1927." Br. at 46. Nothing in Section 1927 carves out an exception for discovery disputes, however, and courts regularly impose sanctions under Section 1927 for multiplying proceedings during discovery. *See Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1020 (2d Cir. 1988) (noting that counsel's "failure to confer in good faith over discovery disputes in violation of a local rule," which resulted in unnecessary motion practice, had "clearly 'multiplie[d] the proceedings . . . unreasonably and vexatiously,' and Section 1927 thus provide[d] ample authority for sanctions").

Appellants also claim, without any legal support, that sanctions are inappropriate because the magistrate judge did not rule on the pending motions, instead denying them as moot after Appellants voluntarily dismissed the case. Br. at 47; *id.*

28

at 33 ("The district court's determination that discovery abuse occurred was wrong because no determination concerning the alleged discovery was ever made.") The Eleventh Circuit has already rejected this identical argument and, in any event, the district court's finding that Appellants' refusal to participate in discovery multiplied proceedings was not clear error. *See Oliva*, 583 F. App'x at 881-82 ("Nor did the magistrate judge plainly err in finding that the punitive damages motion multiplied the proceedings even though it was denied as moot. The NBTY defendants incurred attorney's fees and costs in responding to the motion, and Glick provides no legal support for his assertion that a denial based on mootness does not multiply proceedings.").

Finally, Appellants make passing reference to an argument that the district court's order "failed to view the facts in the light most favorable to Celsius and its counsel." Br. at 1; *id.* at 33 ("The district court failed to view the facts in the light most favorable to counsel for Celsius"); *id.* at 38-39 ("But the record fails to support the district court's criticisms when considered in a light most favorable to counsel"). The law does not, however, have any presumption against findings of bad faith: that is a case-by-case determination for the district court. Appellants' only purported support is *Johnson v. Florida*, 348 F.3d 1334, 1354 (11th Cir. 2003), Br. at 32, which is wholly inapposite as addressing the narrow standard of frivolousness applicable to plaintiffs' civil rights claims under 42 U.S.C. § 1997c(d). This Court's case law

applying Section 1927 makes clear that an appellate court can overturn a district court's factual findings only "if the record clearly indicates that a mistake was made." *Oliva*, 583 F. App'x at 879. The district court's factual findings were based on a straightforward and essentially incontrovertible view of the record (it is an indisputable fact that Appellants failed to produce any evidence supporting their legal claims), and certainly were not clear error.

### C. The Fee Award Was Directly Tied To Excess Proceedings Caused By Appellants' Bad Faith Conduct

The district court awarded Defendants their reasonable attorneys' fees that were incurred as a direct result of Appellants' sanctionable conduct. DE 66 at 9. The district court found that Appellants continued to pursue facially frivolous legal claims after it should have been apparent that there were "fatal flaws" in the legal theories, and that their "failure to meaningfully participate in discovery . . . caused [A SHOC] to file multiple discovery motions, unnecessarily and vexatiously multiplying litigation and driving up [A SHOC's] attorneys' fees." *Id.* at 5, 7. The fee award was limited to reasonable expenses incurred after A SHOC fully briefed its motion to dismiss, at which point Appellants should have appreciated that the claims were legally infirm. *Id.* at 5, 8. Furthermore, A SHOC did not seek fees where multiple attorneys were on calls, or for other potentially duplicative time. *See* DE 54-1 ¶ 17. The court noted that the rates of Gibson Dunn & Crutcher attorneys were reduced by between 30-56% "from the firm's customary rates actually charged to

the client." DE 66 at 9 & n.4; DE 54-1 ¶ 17. The district court did not abuse its discretion in awarding A SHOC its reasonable attorneys' fees incurred after the motion to dismiss was fully briefed.

Appellants do not argue that the fee award was unsupported by record evidence. Indeed, nowhere do they claim that the fee rates were unreasonable, duplicative, or unnecessary. Br. (passim). Appellants do not allege that a single time entry awarded to Defendants was unwarranted; nor is any claim made that the district court misapplied the well settled "lodestar" standard for awarding reasonable attorneys' fees. In the district court, Appellants did not contest the reasonableness of the fees sought by Defendants as required by the Southern District of Florida Local Rules, *see* DE 57 & DE 82-1, and they do not contest the reasonableness of the fees here.

Appellants argue instead that the district court erred by awarding Defendants the fee amount in the sum that was requested. Br. at 34; *id.* at 47-48 (similar). The district court's award is not based on clearly erroneous factual findings or an abuse of discretion. The district court did not award A SHOC anywhere close to all of its attorneys' fees. As the district court noted, Defendants spent well "in excess of $350,000 litigating this case." DE 66 at 8. Defendants claimed only the fees that were directly caused by Appellants' bad faith conduct: the fees incurred after briefing the motion to dismiss, at which point, as the district court found, "it should have

31

been apparent that Plaintiff's claims were meritless." *Id.* (brackets omitted). Even then, the fee amount was further discounted where multiple attorneys were on calls, and the Gibson Dunn rates were significantly reduced. DE 54-1 ¶ 17.

To the extent that Appellants argue that specific fee entries were not causally connected to sanctionable conduct, they have waived that argument. Appellants failed to comply with Southern District of Florida Local Rule 7.3(b), which imposes meet-and-confer obligations on parties before submitting a motion for attorneys' fees. A SHOC complied with that rule, serving on Appellants an advance copy of its motion for sanctions and material supporting its fee request. DE 54-1 ¶ 36. Appellants failed to "describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and [to] provide supporting legal authority," as required by the local rule, thereby waiving his right to contest A SHOC's fees. S.D. Fla. Local R. 7.3(b); DE 54-1 ¶ 36. At no point during the district court proceedings did Appellants argue that any specific fee request was unconnected to the conduct that the district court found sanctionable. *See* DE 57 (passim); DE 82-1 (passim). In any event, the Court scrutinized A SHOC's fees and "conclude[d] that the amount of attorneys' fees requested is reasonable." DE 66 at 9. That conclusion was not clear error.

## II.     The District Court Did Not Violate Appellants' Constitutional Rights

Appellants' final salvo is a grab bag of alleged constitutional violations that grossly mischaracterize the record and are otherwise wholly undeveloped.

Remarkably, Appellants first argue that the "district court never gave former counsel notice that such sanctions were being considered by the court or an opportunity to respond."  Br. at 49.  But Appellants indisputably had notice that Defendants were seeking fees against counsel in their personal capacity.  Defendants' motion for sanctions sought its fees under 28 U.S.C. § 1927, which is titled "Counsel's Liability For Excessive Costs."  The statute's name says it all.  The statute provides for fees against counsel "***to satisfy personally the excess costs, expenses, and attorneys' fees***" incurred as a result of sanctionable conduct, a point that was spelled out throughout A SHOC's briefing.  DE 54 at 11 (emphasis added).  Furthermore, A SHOC's motion clearly put Appellants on notice that it was seeking fees against counsel personally, since the sanctionable conduct was undertaken exclusively by Celsius's attorneys.  Appellants noted as much during the hearing, acknowledging that "the 1927 motion accuses me personally of vexatious conduct."  DE 82-1 at 36. Nowhere do Appellants claim that the district court sanctioned them for anything other than the sanctionable conduct clearly identified on the face of A SHOC's motion.

In addition, Appellants not only had the opportunity to respond, they did in fact respond (while unpersuasively). Appellants had the opportunity to present any argument or evidence that they deemed relevant, both in writing and at the sanctions hearing. *See* DE 57 (sanctions opposition); DE 82-1 (hearing transcript). It is unclear what more the district court could have possibly done to give Appellants an opportunity to present countervailing evidence or argument. *See Auto Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 873 (10th Cir. 2018) (rejecting similar argument); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1321 (11th Cir. 2002) (per curiam) (affirming sanctions and noting due process requires notice and opportunity to respond).

Appellants next claim that the district court's order "penalized former counsel for Celsius for exercising their First Amendment rights on behalf of their client." Br. at 49-50. An attorney has no constitutional right to litigate in bad faith and Appellants' argument in this vein is frivolous. *See Avirgan v. Hull*, 932 F.2d 1572, 1582-83 (11th Cir. 1991) ("the district court's [sanction] order does not infringe upon the appellants' right of access to the courts, or first amendment rights of free association, or [appellants'] professional obligation to represent clients zealously"); *see also O'Rourke v. Dominion Voting Systems, Inc.*, No. 21-1442, 2022 WL 17588344, at *6 (10th Cir. Dec. 13, 2022) (per curiam) (sanctions award did not violate first amendment rights).

Finally, Appellants claim that the sanction award violates the Eighth Amendment's prohibition on excessive fines. They do not cite to any case adopting this novel argument. In any event, the fee award compensates A SHOC for being forced to litigate a frivolous case and because Appellants' discovery tactics necessitated filing multiple motions. It is not punishment, and therefore falls outside the Eighth Amendment's ambit. *Austin v. United States*, 509 U.S. 602, 610 (1993) (Excessive Fines Clause applies only to punishment).

## III. The Evidence Regarding The SEC Investigation Into Celsius Is Immaterial

Appellants refer to an SEC Investigation that apparently "consumed Celsius and its executive management" and that "this litigation was a distraction," but it is unclear what possible relevance this has. Br. at 21 (capitalization altered). It is unclear whether Appellants are putting this forth as a belated explanation for why they "flagrantly disregarded the discovery process by refusing to meaningfully participate in discovery," DE 66 at 4, or for some other purpose.

Either way, it is immaterial. At no point during the lower court proceeding was any evidence regarding the SEC investigation offered as an excuse for Appellants' conduct. DE 57; DE 82-1. And, in any event, an attorney is not somehow excused from their professional obligations by virtue of their client being investigated for securities fraud (or any other crime, for that matter). The fact that the SEC

was investigating Celsius has no bearing on whether the district court abused its discretion in sanctioning counsel.

## IV.    A SHOC's Partial Rebranding Is Irrelevant

Appellants also put emphasis on A SHOC's partial rebranding, apparently as a justification for voluntarily dismissing the case on the eve of the court's hearing to resolve all of the pending motions. Br. at 22-23, 25. The record does not indicate whether or not the "rebranding" was a factor in Celsius's and Appellants' decisionmaking, or to what degree. In any case, the issue is immaterial because it does not negate the bad faith found by the district court, which is all that is needed to require affirmance by this Court.

## V.    Amicus's Arguments Do Not Support Reversal

Amicus makes several arguments, none of which were raised below and, in any event, do not support a finding that the district court abused its discretion.

Amicus argues that the district court's order imposes an "unreasonable duty on attorneys, because they necessarily rely on the advice of their clients and experts when deciding whether to pursue claims where the issues involved are complex and scientific in nature." Amicus Br. at 4, 6-8.

Amicus's contention is wholly off the mark because there is *no* scientific evidence supporting Celsius's allegation that A SHOC's statements were false. Cel-

sius refused to answer basic interrogatories asking it to "[d]escribe in detail the factual basis for . . . the proposition that the A SHOC ACCELERATOR product is not THERMOGENIC," DE 54-2, Ex. D at 9-10, refused to produce any documents supporting their allegation that A SHOC ACCELERATOR did not accelerate metabolism, *see* DE 54-2, Ex. G at 63, and did not put forth an expert opinion supporting any claim of falsity. Indeed, one of the key reasons the district court sanctioned Appellants was their refusal to put forth any evidence supporting the claims. DE 66 at 7. This is not a case where there is competing scientific evidence and the district court sided with one party over the other. Rather, there was a *vast* amount of scientific evidence supporting A SHOC's position, and *none* supporting Celsius's allegations. As the district court put it, "[g]iven the scientific consensus in this area, it is no wonder that Plaintiff did not—and likely was unable to—produce any evidence to support its allegations." DE 66 at 6.[3]

Amicus also argues that the district court's order "chills access to justice," and "deters attorneys from accepting representation of clients in cases where novel

---

[3] Amicus repackages its reasonable-reliance argument as an assertion that the order interferes with the attorney-client relationship. Amicus Br. at 8. Regardless of how it is framed, Celsius produced zero evidence supporting its argument that A SHOC's beverage was not thermogenic and did not accelerate metabolism. There is no reasonable disagreement about the science here, because Appellants put forth no scientific evidence (or any other type of evidence, for that matter) supporting their claims.

claims are at issue and where clients cannot afford to pay." Amicus Br. at 11-12.

Again, this case, which does not involve novel issues or an impecunious client, does

not present a proper occasion for consideration of these points. Celsius is not a low-

income client. It is a publicly traded company with a market cap of roughly $7

billion. The district court's opinion is not going to squelch attorneys' willingness to

take "close calls" on behalf of "clients [who] cannot afford to pay." Amicus Br. at

11-13. It may deter attorneys from bringing theories that are "not legally cogniza-

ble," DE 66 at 6, and are supported by zero evidence on behalf of multi-billion-dollar

companies trying to drive smaller upstart competitors out of business, which is what

actually happened here.[4]

## CONCLUSION

The district court's order awarding A SHOC its reasonable attorneys' fees

incurred as a direct result of Celsius's counsel's bad faith conduct should be af-

firmed.

---

[4] Amicus also attempts to assign responsibility to the district court for requiring
the parties to engage in discovery while a motion to dismiss was pending. Celsius
did not request a stay of discovery until the motion to dismiss was adjudicated,
and so cannot now claim that it was prejudiced by the district court's aggressive
scheduling order.

Dated:  March 14, 2023                    Respectfully submitted,

                                                   */s/ Howard S. Hogan*

KEVIN C. KAPLAN                           HOWARD S. HOGAN
COFFEY BURLINGTON, P.L.                    CHRISTOPHER F. KOPP
2601 South Bayshore Drive                  GIBSON, DUNN & CRUTCHER LLP
Penthouse One                             1050 Connecticut Avenue, N.W.
Miami, FL  33133                          Washington, DC  20036
(305) 858-2900                            (202) 887-3640

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This brief complies with the word limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 9,717 words.

2.      This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman, 14-point font.


Dated:  March 14, 2023                    _____
                                                              */s/ Howard S. Hogan*
                                                              Howard S. Hogan

## CERTIFICATE OF SERVICE

I certify that on March 14, 2023, I caused the foregoing brief to be electronically filed with the clerk of court and served on all counsel of record via this Court's CM/ECF system.

*/s/ Howard S. Hogan*

Howard S. Hogan