APPEAL CASE NO.: 22-12687-HH

---

# IN THE
# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

JOEL B. ROTHMAN, CRAIG A. WIRTH, and SRIPLAW, P.A.,
Appellants,

v.

A SHOC BEVERAGE, LLC, *et. al.*
Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case No.: 9:21-cv-80740-DMM-WM

---

## APPELLANTS' REPLY BRIEF

---

JOEL B. ROTHMAN
**SRIPLAW, P.A.**
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350
*Pro se and counsel for Craig A. Wirth and SRIPLAW, P.A.*

AVERY A. DIAL
BARBARA R. SCHABERT
**KAUFMAN DOLOWICH & VOLUCK, LLP**
100 SE 3rd Avenue, Suite 1500
Fort Lauderdale, Florida 33394
Telephone: (954) 302-2360
*Counsel for Joel B. Rothman, Craig A. Wirth and SRIPLAW, P.A.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)</u>

Appellants, JOEL B. ROTHMAN, CRAIG A. WIRTH, and SRIPLAW, P.A., by and through their undersigned counsel and pursuant to 11th Cir. R. 26.1-1(a) hereby state as follows:

Upon information and belief based on due diligence research performed, the following are believed to have an interest in the outcome of this case or appeal:

A Shoc Beverage, LLC

Celsius Holdings, Inc.

Coffey Burlington, P.L. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

DeSantis, Carl – Shareholder of Celsius Holdings, Inc.

Dial, Avery A. – Counsel for Appellants

Hogan, Howell S. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaplan, Kevin C.  – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Kaufman Dolowich & Voluck, LLP – Counsel for Appellants

Keurig Dr. Pepper, Inc.

Kopp, Christopher F. – Counsel for A Shoc Beverage, LLC and Keurig Dr. Pepper, Inc.

Milmoe, William H. – Shareholder of Celsius Holdings, Inc.

Rothman, Joel B. – Appellant

Schabert, Barbara R. – Counsel for Appellants

Shing, Li Ka – Shareholder of Celsius Holdings, Inc.

SRIPLAW, P.A. – Appellant

Teitelbaum, Meir – Counsel for Celsius Holdings, Inc.

Wirth, Craig A. – Appellant

*/s/ Avery A. Dial, Esq.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................v

I.    SUMMARY OF THE REPLY ARGUMENT....................................................1

II.   ARGUMENT ....................................................2

   a.    *De Novo* Review Applies and on *De Novo* Review Reversal is Required Because Former Counsel's Procedural Due Process Rights Were Violated .........2

     1.    The District Court Failed to Provide Fair Notice to Former Counsel ......2

     2.    Lumping Former Counsel in with Celsius by Conflating their Roles Deprived Former Counsel of Fair Notice .........4

   b.    The Record is Devoid of Any Bad Faith Conduct by Counsel and the District Court's Finding of Bad Faith was an Abuse of Discretion .................12

     1.    A Shoc's Crystal Ball Waiver Argument Fails.........................................15

     2.    Blaming Former Counsel for its Client's Actions Simply Because Lawyers in Our Judicial System are their Client's Representatives is Not a Substitute for Proving Bad Faith.........18

     3.    None of A Shoc's Legal Authorities Provide any Support for the Unprecedented Sanctions Imposed by the District Court Below on Former Counsel Whose Only Iniquity was that they Represented A Shoc's Competitor Celsius. .........21

     4.    The District Court's Sanction Award was Untethered to Any Alleged Vexatious Conduct.........23

III.  CONCLUSION.........25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

293 F.3d at 1308.................................................................................................9

311 F.3d 1077 (11th Cir. 2002) ......................................................................19

766 F. App'x 901, 908 (11th Cir. 2019) ........................................................22

855 F.2d 1009, 1020 (2d Cir. 1988)................................................................23

*Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).........17

*Amlong & Amlong,* 500 F.3d at 1242 .............................................................24

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180 (11th Cir. 2006)........7, 19

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2006),...........22

*Apex Oil Co. v. Belcher Co. of N.Y.* ..............................................................23

*Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 198 F. Supp. 3d 1239, 1245 (D. Colo. 2016). ..................................................................................11

*Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863 (10th Cir. 2018) ...........................................................................................................9

*Auto-Owners,* 886 F.3d at 866 .......................................................................10

*Auto-Owners,* 886 F.3d at 868-9.....................................................................10

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 12 F.3d 1045, 1050 (11th Cir. 1994) ...........................................................................................................2

*BankAtlantic,* 12 F.3d at 1050.........................................................................6

*Blue v. Lopez*, 901 F.3d 1352, 1357 n.3 (11th Cir. 2018)................................18

*Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985)...............24

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)..........................................3

*DeVaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993).................2

*Donaldson v. Clark*, 819 F.2d 1551, 1559-61 (11th Cir. 1987) ........................4

*Donaldson,* 819 F.2d at 1562 .........................................................................4

*Eldredge v. EDCare Mgmt.* ............................................................................22

*Frey v. Town of Jackson*, 41 F.4th 1223 (10th Cir. 2022)................................20

*Frey,* 41 F.4th at 1244 ...................................................................................20

*In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir. 1990)...................................3

*In re Finkelstein*, 901 F.2d 1560, 1565 (11th Cir. 1990)...................................5

*In re Mroz,* 65 F.3d at 1575-76. .....................................................................3

*In re Ruffalo,* 390 U.S. 544, 545 (1968) .........................................................3

*Link v. Wabash R. Co.,* 370 U.S. 626, 632 (1962).............................................3

*McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001).................................19

*Oliva v. NBTY, Inc.*, 583 F. App'x 877, 881 (11th Cir. 2014)..............................20

*Oliva v. NBTY, Inc.*, No. 11-80850-CIV, 2014 U.S. Dist. LEXIS 193390 (S.D. Fla. Apr. 28, 2014)............................................................................................20

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997) ..................19

*Peterson,* 124 F.3d at 1396 ...................................................................24

*POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014).............................14

*Royal Palm Props., LLC v. Pink Palm Props., LLC*, No. 17-80476-CV, 2021 U.S. Dist. LEXIS 54150 (S.D. Fla. Feb. 17, 2021) ......................................11

*Royal Palm Props., LLC v. Pink Palm Props., LLC,* No. 17-80476-CV-DMM, 2018 U.S. Dist. LEXIS 140370 (S.D. Fla. Aug. 17, 2018) ................................11

*Royal Palm Props., Ltd. Liab. Co. v. Pink Palm Props., Ltd. Liab. Co.,* 38 F.4th 1372 (11th Cir. 2022)................................................................11

*Royal Palm Props., Ltd. Liab. Co. v. Pink Palm Props., Ltd. Liab. Co*., 950 F.3d 776 (11th Cir. 2020).................................................................11

*Ruffalo*, 390 U.S. at 556 ..........................................................................5

*Serra Chevrolet, Inc. v. GMC*, 446 F.3d 1137, 1147 (11th Cir. 2006)....................2

*Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306 (11th Cir. 2002) ....................9

*Thomas v. Tenneco Packaging, Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) ...........3

*Thomas,* 293 F.3d at 1316 n.14 .................................................................10

*Thomas*, 293 F.3d at 1316-17 ...................................................................10

*United States v. Shaygan*, 652 F.3d 1297, 1310 (11th Cir. 2011) ...........................2

*Young Apartments,* 503 F. App'x at 715-6 ...................................................22

*Young Apartments, Inc. v. Town of Jupiter*, 503 F. App'x 711, 716 (11th Cir. 2013) ..........................................................................................22

*Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027 (11th Cir. 2008) ..22

**Statutes**

§ 1927............................................................................ passim

§ 1983............................................................................19

15 U.S.C. § 1117(a) ............................................................11

28 U.S.C. § 1927.............................................................6, 24

Section 1927............................................................ 5, 19, 23, 24

**Rules**

Fed. R. Civ. P. Rule 11 ...........................................................3

Fed. R. Crim. P. 42(b).............................................................4

Rule 11 ........................................................................4, 8

## I.    SUMMARY OF THE REPLY ARGUMENT

The district court provided no notice to former counsel for Celsius whatsoever before counsel was summarily sanctioned in violation of counsel's due process rights. Former counsel were never advised of the charges against them, never given an opportunity to defend themselves, and were fined solely on the basis of counsel's role as counsel for Celsius. On *de novo* review, the absence of any facts or evidence in the record demonstrating counsel did anything sanctionable requires reversal.

In response to former counsel's appeal challenging the factual and legal basis for the district court's decision below, A Shoc failed to search the record and cite to evidence to support the district court's conclusions. Instead, A Shoc's brief is filled with references to the district court's decision at DE 66 as supportive of the district court's conclusions in that same decision. A Shoc's brief referred throughout to the district court's findings being "supported by the record," but A Shoc never once cited to record evidence that supported any of the district court's findings. Instead, A Shoc repeatedly cited to the district court's decision at DE 66 as if the district court's conclusions were somehow self-supporting. They are not.

It was incumbent on A Shoc to show this court record facts supporting the district court's determinations. Citing to DE 66 over and over again revealed the truth: there is no support whatsoever for the imposition of sanctions against former

1

counsel, and it was an abuse of discretion for the district court to sanction former

counsel under § 1927.

## II.    ARGUMENT

### a. *De Novo* Review Applies and on *De Novo* Review Reversal is Required Because Former Counsel's Procedural Due Process Rights Were Violated

A Shoc argued in its brief that the standard of review is abuse of discretion.

(Resp. Br. at 16). A Shoc's reply ignores former counsel for Celsius' assertion that

*de novo* review applies where, as here, the district court denied former counsel due

process. (Init. Br. at 31). Former counsel for Celsius cited *BankAtlantic v. Blythe*

*Eastman Paine Webber, Inc.,* 12 F.3d 1045, 1050 (11th Cir. 1994) and *DeVaney v.*

*Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993) for the proposition that

the district court's imposition of sanctions denied former counsel constitutionally

effective notice and is reviewed *de novo.* A Shoc offered no argument in response.

*De novo* review is indisputably proper due to the district court's violation of

former counsel's due process. *United States v. Shaygan*, 652 F.3d 1297, 1310 (11th

Cir. 2011) ("[w]e review de novo the argument that the sanctions imposed by a

district court violated due process.") quoting *Serra Chevrolet, Inc. v. GMC*, 446

F.3d 1137, 1147 (11th Cir. 2006).

### 1.  The District Court Failed to Provide Fair Notice to Former Counsel

"[F]or the imposition of sanctions to be proper, a court 'must comply with

the mandates of due process.'" *Thomas v. Tenneco Packaging, Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why," as well as "an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions." *In re Mroz,* 65 F.3d at 1575-76.

"The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link v. Wabash R. Co.,* 370 U.S. 626, 632 (1962). In disbarment proceedings for example, attorneys are entitled to procedural due process requiring charges of specific misconduct in advance so that the attorney can defend against the charges; charges added as a result of witness testimony during disbarment hearings do not qualify as fair notice. See *In re Ruffalo,* 390 U.S. 544, 545 (1968); *In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir. 1990) (citing *Ruffalo* for the proposition that the relevant inquiry is whether the attorney can be deemed to have been on notice that the courts would condemn the conduct for which he was sanctioned.)

When called upon to consider what fair notice meant in connection with the prior version of Fed. R. Civ. P. Rule 11 (before it was amended to provide 21 days

notice), this Court said:

> Due process requires that the attorney (or party where applicable) has fair notice of the possible imposition of Rule 11 sanctions and of the reasons for their imposition. The existence of Rule 11 itself constitutes a form of notice since the rule imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed; an attorney could not assert that he or she had no notice or knowledge of the standards of conduct that the rule itself provides.
> ***
> The accused must be given an opportunity to respond, orally or in writing as may be appropriate, to the invocation of Rule 11 and to justify his or her actions.
> ***
> When an attorney has failed to present necessary factual support for claims despite several opportunities to do so, for example, further hearing on the sanctions issue may well be not only unnecessary but also a waste of judicial resources. On the other hand, when a court is asked to resolve an issue of credibility or to determine whether a good faith argument can be made for the legal position taken, the risk of an erroneous imposition of sanctions under limited procedures and the probable value of additional hearing are likely to be greater.

*Donaldson v. Clark*, 819 F.2d 1551, 1559-61 (11th Cir. 1987).[1]

Applying the principles of *Donaldson* here, fair notice was absent.[2] Former counsel were never advised of their transgressions and never given an opportunity to defend themselves. Former counsel were fined solely on the basis of counsel's

---

[1] In his concurrence, Judge Johnson, joined by Judges Tjoflat, Kravitch and Hatchett, went even further and suggested that in some situations the safeguards applicable to criminal contempt proceedings under Fed. R. Crim. P. 42(b) may have to be followed when imposing sanctions. *Donaldson,* 819 F.2d at 1562.

[2] The sanctions award was also an excessive fine and violated counsel's client's free speech rights (Init. Br. at 49-50), but the lack of fair notice led to the other violations.

role as counsel for Celsius without being informed of the facts or evidence

showing that counsel did something apart from representing their client.

      This Court previously agreed with Justice White's pronouncement that it is

wrong to "deprive an attorney of the opportunity to practice his profession on the

basis of a determination after the fact that conduct is unethical if responsible

attorneys would differ in appraising the propriety of that conduct." *In re

Finkelstein*, 901 F.2d 1560, 1565 (11th Cir. 1990) quoting *Ruffalo*, 390 U.S. at 556

(White, J., Concurring). In *Finkelstein*, this Court similarly refused to impose

sanctions on an attorney for the same reasons as the Supreme Court in *Ruffalo*. A

Shoc claims this Court can do exactly what *Finkelstein* and *Ruffalo* prohibited:

punish former counsel based on *post hoc* determinations without any evidence to

back them up. A Shoc is wrong, and *de novo* review makes this apparent.

### 2. Lumping Former Counsel in with Celsius by Conflating their Roles Deprived Former Counsel of Fair Notice

      A Shoc's vague arguments and non-specific claims in response cast a wide

net. A Shoc points to its counsel's presentation at the hearing. (Resp. Br. at 33).

That presentation asserted that an exceptional case finding under Lanham was

justified, and that an "award of monetary sanctions is also independently supported

under the Court's exercise of inherent authority against Celsius, and/or its counsel,

and under Section 1927, which would be directed against counsel." (DE 82-1 at 4).

But A Shoc never said in its presentation why counsel, as opposed to Celsius,

deserved such harsh treatment.

The district court said nothing in the hearing that put former counsel on notice of anything they did wrong independently of their representation of their client or that justified the imposition of sanctions against counsel alone. Former counsel never received "fair notice" from the district court that their heads were on the district court's chopping block.

A Shoc's submissions in support of its motion for sanctions were devoid of any specific facts implicating former counsel in any vexatious or litigation multiplying behavior whatsoever. A Shoc's motion in support dropped a footnote where it "defer[ed] to the Court whether it is appropriate to sanction Plaintiff's counsel under 28 U.S.C. § 1927 or Celsius under the Court's inherent power," but otherwise A Shoc was silent about why former counsel deserved sanctions.

A Shoc characterized former counsel's due process claims as "a grab bag of alleged constitutional violations" (Resp. Br. at 33) but failed to substantively address any of them, mischaracterized the record, and conflated former counsel's actions with those of its former client Celsius. Take for example A Shoc's response to former counsel's procedural due process argument. (Resp. Br. at 33). Former counsel for Celsius argued that they were entitled to notice from the district court that "their actions subjected them to sanction and whether the sanction was 'just' under the circumstances" citing *BankAtlantic,* 12 F.3d at 1050. (Init. Br. at 49).

A Shoc argument in response conflates former counsel with its former client Celsius. Even though A Shoc's motion for sanctions was directed at Celsius and only mentioned former counsel in the footnote on page one of the motion, A Shoc now misleadingly claims former counsel "indisputably had notice that Defendants were seeking fees against counsel in their personal capacity" because the title and text of § 1927 says counsel "personally" must pay the amounts "incurred as a result of sanctionable conduct, a point that was spelled out throughout A SHOC's briefing. DE 54 at 11."

A Shoc's argument is a gross mischaracterization of what occurred below. The portion of A Shoc's motion that A Shoc cited to quoted from the text of § 1927, cited this Court's decision in *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180 (11th Cir. 2006) (that reversed the district court's imposition of sanctions against the attorneys in that case), and then argued:

> *Celsius's* conduct in this case is a textbook example of proceedings that have been multiplied "unreasonably and vexatiously." *It* brought claims with no basis in law or fact and dragged out discovery with frivolous objections. *It* willfully disregarded the Court's scheduling order, finally withdrawing its claims only to avoid appearing before this Court to justify its conduct. An award of sanctions is appropriate.

(DE 54 at 11)(emphasis added).

A Shoc's assertion that the passage quoted above "clearly put Appellants on notice that it was seeking fees against counsel personally, since the sanctionable conduct was undertaken exclusively by Celsius's attorneys" (Resp. Br. at 33) is

absurd. The passage refers to "*Celsius's* conduct" not counsel's conduct. The "*It*" that A Shoc claimed "brought claims with no basis in law or fact" was *Celsius*.[3] The "*It*" that A Shoc claimed "dragged out discovery with frivolous objections" was *Celsius*.[4] The "*It'* that A Shoc claimed "willfully disregarded the Court's scheduling order" was *Celsius*.[5] The "*It*" that A Shoc claimed "withdr[ew] its claims only to avoid appearing before this Court to justify its conduct" was *Celsius*.[6]

Arguing former counsel should have known sanctions were being sought against them, A Shoc asks the question: "what more the district court could have possibly done to give Appellants an opportunity to present countervailing evidence

---

[3] The district court never determined the motion to dismiss. No motion for summary judgment was filed. No Rule 11 motion was served or filed. No determination that anyone "brought claims with no basis in law or fact" was ever made.

[4] The district court never ruled on A Shoc's motions to compel or Celsius' discovery objections. No determination that Celsius' discovery objections were frivolous was ever made below.

[5] The district court's "rocket docket" scheduling order was never violated by Celsius. There was never any determination made on this claim and it is completely false.

[6] Celsius' motivation for dismissing the case was explained in its opposition to the sanctions motion (DE 57) and Appellants' initial brief and had nothing to do with any concerns about appearing before either the Magistrate Judge or the District Judge in the case below. A Shoc's rebranding and the SEC investigation of Celsius are relevant to this issue, notwithstanding A Shoc's contrary view. (Resp. Br. at 35-36).

or argument"?[7] (Resp. Br. at 34). Instead of answering its own question, A Shoc

punctuated that last sentence with citations this Court's decision in *Thomas v.*

*Tenneco Packaging Co.,* 293 F.3d 1306 (11th Cir. 2002), and the Tenth Circuit's

decision in *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863

(10th Cir. 2018).

But *Thomas* and *Auto-Owners* stand as examples of the fair notice required

that former counsel never received below. In *Thomas*, the district court sanctioned

counsel for submitting documents "saturated with rude, demeaning remarks about

opposing counsel's physical traits and demeanor that served no purpose other than

to harass and intimidate opposing counsel," 293 F.3d at 1308, but it did so only

after only after it "*issued an order directing Munson to show cause why sanctions*

*should not be levied against her." Id.*

> The court stated that it was issuing the Show Cause Order because
> "various documents submitted by Plaintiff's counsel . . . contain
> improper, offensive, and insulting statements which amount to little
> more than personal attacks on opposing counsel." R4-113-1.
> Specifically, the district court pointed to five documents that
> contained "personal attacks on [opposing counsel's] character and his
> fitness as an attorney."
> ***
> Based on the offensive remarks about opposing counsel contained in
> the five documents, the court stated that it was considering the

---

[7] How about give former counsel fair notice by issuing an order to show cause with
specific allegations about counsel's conduct the court believed was vexatious?
That's what happened in *Thomas,* 293 F.3d at 1316, but it is not what happened
below.

imposition of sanctions on Munson. Before it reached a conclusion on the matter, however, the district court noted that Munson was to have an opportunity to respond. Accordingly, the court granted Munson twenty days to show cause why sanctions would not be proper.

*Thomas*, 293 F.3d at 1316-17. This Court affirmed the sanctions order because, *inter alia*, the attorney had very specific fair notice of the district court's grievance. This Court also rejected the argument that the sanctions were entered *sua sponte,* determining that the lawyer had fair notice under the circumstances. *Thomas,* 293 F.3d at 1316 n.14.

The Tenth Circuit in *Auto-Owners* affirmed sanctions against two lawyers who failed to disclose their prior relationships with an appraiser appointed to appraise the property at issue in that insurance dispute. The plaintiff and its lawyers were *warned in advance* by order of the district court to disclose facts bearing on the appraiser's impartiality. *Auto-Owners,* 886 F.3d at 866. The lawyers disregarded the court's warning. The lawyers knew that the appraiser they proposed had worked on appraisals for 33 other clients of the lawyers' firm, the firm represented the appraiser for more than a decade, the law firm and the appraiser co-founded a Florida lobbying firm together, and one of the law firm's attorneys' was incorporator and registered agent for one of the appraiser's companies. *Auto-Owners,* 886 F.3d at 868-9. Furthermore, the district court in *Auto-Owners* did not treat the lawyers and their client as one and the same, but instead analyzed the client's conduct separately from the lawyers' and determined

10

that the client also deserved sanctions because it "was aware of [the appraiser's] background and bears at least some degree of responsibility for his selection and his inadequate disclosures." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 198 F. Supp. 3d 1239, 1245 (D. Colo. 2016).

A Shoc 's argument that former counsel always knew they were in the cross hairs for a sanctions award and that as a result their due process rights could not have been violated because former counsel ended his presentation with the statement that "the § 1927 motion accuses me personally of vexatious conduct" once again conflates counsel with their client Celsius and takes the statement to the district judge out of context. (Resp. Br. at 33).

Former counsel's conclusion to his argument followed on the heels of an exchange between the district court and counsel concerning whether the case was exceptional under the attorneys' fee standard applicable to Lanham Act cases.[8] Counsel then summed up his argument:

---

[8] In the course of that discussion, former counsel referred to the district court's decision in *Royal Palm Props., LLC v. Pink Palm Props., LLC*, No. 17-80476-CV, 2021 U.S. Dist. LEXIS 54150 (S.D. Fla. Feb. 17, 2021) that denied "exceptional case" fees under the Lanham Act, 15 U.S.C. § 1117(a), which was subsequently affirmed by this Court in *Royal Palm Props., Ltd. Liab. Co. v. Pink Palm Props., Ltd. Liab. Co.,* 38 F.4th 1372 (11th Cir. 2022). The district court then responded by referring to its earlier decision on the trademark issues in *Royal Palm Props., LLC v. Pink Palm Props., LLC,* No. 17-80476-CV-DMM, 2018 U.S. Dist. LEXIS 140370 (S.D. Fla. Aug. 17, 2018), that was reversed by this Court on appeal. *Royal Palm Props., Ltd. Liab. Co. v. Pink Palm Props., Ltd. Liab. Co*., 950 F.3d 776 (11th Cir. 2020).

> You know, my concern is obvious, your Honor; that my client, you
> know, had a valid case, and that the 1927 motion accuses me
> personally of vexatious conduct. And I have been called a lot of
> things. I haven't been called vexatious, and I don't think I was in this
> case. In fact, if anything, I was trying very hard to get to a resolution
> without having to force the other side to engage unnecessarily in
> litigation.

(DE 82-1 at 36-37).

A Shoc's argument that the passage quoted above somehow waived former counsel's due process rights is preposterous. The district court never once said at any point in the course of the hearing that it intended to enter an order awarding "attorneys' fees as a sanction" under § 1927 (DE 66 at 5), or that the amount of the sanction would be "entered against Plaintiff's counsel." (DE 66 at 10).

**b. The Record is Devoid of Any Bad Faith Conduct by Counsel and the District Court's Finding of Bad Faith was an Abuse of Discretion**

A Shoc's motion to the district court was rife with factual inaccuracies and outright contrivances disguised as "evidence" of bad faith, and the district court bought into them hook, line and sinker. A Shoc trots its false facts back out in its brief along with the conclusory assertion that A Shoc's false facts "laid out a pattern of conduct that was supported by the record…". (Resp. Br. at 25).

Celsius explained in detail in its statement of the case in its initial brief the facts below to show there was no pattern of bad faith conduct. A Shoc did not respond to any of former counsel's factual recitations. A Shoc never addressed the absence of any factual underpinnings to support the district court's incorrect

conclusions either. Instead, A Shoc discarded thirty pages of former counsel's statement of the case in its brief with the rhetorical (and false) assertion that former counsel "do not seriously dispute, in anything more than the most cursory way, that the district court's findings were clearly erroneous or that the district court abused its discretion in imposing sanctions."[9] (Resp. Br. at 25).

Let there be no mistake: former counsel demonstrated in their brief that the district court's conclusions lacked factual support and relied solely on conclusory allegations that were unsupported and, therefore, the district court's findings were clearly erroneous and the district court abused its discretion in imposing sanctions.

Take for example the district court's conclusion that "Celsius's claims were flatly refuted by scientific studies that Celsius cited in its own complaint and were 'directly undercut by well-established research.' (DE 66 at 6)." (Resp. Br. at 25). There is no such "well-established research" in the record. The scientific studies in

---

[9] Factual misstatements and outright fabrications like this one pervade A Shoc's brief. Another example: "Appellants do not actually contend that the legal claims they promoted had any merit (either in their subjective opinion or objectively)." (Resp. Br. at 26). That statement is an outright falsehood. Former counsel explained in their statement of the case in detail why Celsius' complaint was meritorious. Former counsel asserted clearly and repeatedly in their initial brief that the order on appeal lacks findings concerning the actions or omissions of counsel for Celsius (Init. Br. at 42), the order lacks any basis to show that counsel acted unreasonably or vexatiously (Init. Br. at 43), and the order on appeal lacks any basis to impose sanctions. (Init. Br. at 44). A Shoc obviously could not find any support for the district court's order, so it resorted in its brief to just making things up.

the record concerned *studies of Celsius' formula*, not studies of caffeine generally, and certainly not studies of A Shoc's formula. Caffeine is obviously dose dependent, a fact that is apparent to anyone who has ever consumed too many cups of coffee. There is no evidence in the record to show how much caffeine a can of A Shoc contains.[10] Therefore, Celsius' allegations in the complaint that A Shoc's structure/function claims were unsupported because they were based on an unknown amount of caffeine were never "undercut."[11]

Take for yet another example the district court's conclusion that Celsius' "trade dress claims were 'premised on standard conventions,'" were "not protectible trade dress," and that former counsel "should have known as much no later than when Defendants filed their motion to dismiss (*id*. at 7)." (Resp. Br. at 25). Former counsel set forth in their brief the trade dress analysis of the Celsius

---

[10] The district court quoted from studies in footnote 3 of the order at page 6. The quotes the district court chose all concerned the ingestion of a single 100mg dose of caffeine. However, there is no evidence in the record how much caffeine is contained in a can of A Shoc, so therefore the assumption the district court made— that the studies quoted from applied to A Shoc as well as to Celsius—was a false assumption.

[11] Celsius' claims were not "Lanham Act or state law claims that 'exist solely by virtue of the FDCA,' or "would require litigation of an underlying FDCA violation" which is the way the district court incorrectly characterized them. (DE 66 at 6). Rather, Celsius' claims fell precisely within the Supreme Court's decision in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014) that held the Lanham Act empowered private parties to sue competitors to protect their interests on a case-by-case basis where the plaintiff challenged the competitor's FDCA regulated beverage label as being false or misleading.

can and the A Shoc can, their similarities, and Celsius' claim to be the senior user of the trade dress elements described in the complaint. A Shoc failed to respond to these facts by refuting them, contradicting them, or otherwise pointing to the record as showing that Celsius' can design was not entitled to senior status or trade dress protection. A Shoc did instead what the district court did, which was criticize Celsius' trade dress claim by improperly comparing the individual features of Celsius' trade dress with the cans belonging to different products on the market, an irrelevant exercise.

### 1. A Shoc's Crystal Ball Waiver Argument Fails

In its initial brief, former counsel for Celsius asserted that A Shoc never came forward with any evidence or specific allegations against former counsel that identified the conduct of counsel as deserving of sanctions, as opposed to the conduct of Celsius. (Init. Br. *passim*). Former counsel also argued that the district court's decision speaks only in terms of plaintiff (meaning Celsius) throughout and does not make a distinction between Celsius and counsel when discussing the basis for sanctions, and therefore the district court's order fails to support the imposition of sanctions against former counsel. (Init. Br. at 41-47).

In response, A Shoc admits that A Shoc's case for sanctions was not targeted but scattershot. A Shoc concedes that the language of the district court's order does not support the imposition of sanctions against counsel specifically. However, A

Shoc asserts that former counsel's argument that it was "Celsius (the client) [who] was responsible for any of the bad faith conduct in the underlying litigation has been waived." (Resp. Br. at 21).

A Shoc's stunning waiver argument merits a full quote if only to allow the reader to ponder the sheer absurdity of it.

> At no point before this appeal did Appellants argue that Celsius was responsible, in any way, for counsel's actions. *See* DE 57 (response to motion for sanctions) (passim); DE 82-1 (hearing transcript) (passim). They did not make this argument in opposition to A SHOC's motion for sanctions, instead choosing to argue that there was no vexatious litigation conduct by anyone. *See* DE 57 (passim). Nor did they present any evidence at the sanctions hearing that the client was responsible for any of counsel's conduct. *See* DE 82-1 (passim). Appellants essentially fault the district court for not *sua sponte* drawing a distinction that Celsius's counsel never raised or provided any evidence to support. If Appellants believed that Celsius, as opposed to their firm, should be held responsible for advancing frivolous legal positions and failing to participate in discovery, it was incumbent upon Appellants to raise and argue that point. They failed to do so.

(Resp. Br. at 21-22).

A Shoc's waiver argument turns the burden of proof on its head and casts the ethics rules asunder. Think about it: in a broad stroke A Shoc accused former counsel's client of wrongdoing in connection with litigated issues that were never decided by the court. A Shoc now says that in response to A Shoc's motion for sanctions that accused Celsius "and/or" former counsel of unspecified offences, former counsel was obligated to immediately utilize attorney/client and work

product protected information to point the finger of blame at Celsius.[12] According to A Shoc, former counsel's failure to blame Celsius caused former counsel to become an accomplice after the fact with its former client and effected an extensive waiver of rights and defenses to the order that the district court subsequently issued.

A Shoc's waiver argument only flies in a world where lawyers have no duties of loyalty to clients and possess working crystal balls that predict the future. It's an absurd argument with no legal support whatsoever. A Shoc cites only to *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004), but there the plaintiff advanced a novel legal argument on appeal that relied on a very specific statute where neither the facts supporting the argument nor the statute relied upon were ever raised below. The waiver in *Access Now* is not the type of waiver A Shoc advances here.

A Shoc's waiver would prevent former counsel from arguing purely questions of law such as whether A Shoc proved its entitlement to § 1927 sanctions by demonstrating that former counsel engaged in "unreasonable and vexatious"

---

[12] This is undoubtedly A Shoc's argument. If the Court doubts that A Shoc is really making this argument—incredibly enough through its lawyers—one need only turn the page to find A Shoc again faulting former counsel because "Appellants did not argue to the district court, that any of the contumacious conduct identified by the district court was caused by Celsius's actions, or that fees should be apportioned to anyone other than Appellants. *See* DE 57 (passim); DE 82-1 (passim)." (Resp. Br. at 22).

conduct that "multiplies the proceedings," or that the amount of the sanction bears a financial nexus to the excess proceedings. But questions of law are never waived. *Blue v. Lopez*, 901 F.3d 1352, 1357 n.3 (11th Cir. 2018). Neither are questions where the ends of justice will be best served by this Court's consideration of them. *Id*. Those are the questions presented here, and on those questions there could be no waiver.

## 2. Blaming Former Counsel for its Client's Actions Simply Because Lawyers in Our Judicial System are their Client's Representatives is Not a Substitute for Proving Bad Faith

A Shoc concedes (with *emphasis*) that it cannot distinguish between the offending conduct undertaken by former counsel versus the offending conduct undertaken by former counsel's client—the pursuit of frivolous legal claims, the failure to participate in discovery, the "deficient" expert reports—because "*[a]ll of that conduct was undertaken by counsel."* (Resp. Br. at 22)(emphasis in original). Because "neither Defendants nor the district court have had *any* interaction with Celsius, except through Appellants," A Shoc argues that in this case no distinction should be drawn between attorney and client. After all (and again with *emphasis*), "*[a]ll* of the bad faith conduct was undertaken *directly* by Celsius's attorneys."[13]

---

[13] In support, A Shoc asserts that counsel, not counsel's client, acted in bad faith because former counsel "signed the complaint (*see* DE 1 at 31), signed all of the discovery papers (*see* DE 34-2 at 78; DE 35-3 at 200; DE 35-4 at 13), submitted deficient "expert reports," (*see* DE 39-5; DE 39-8) and refused to submit any evidence supporting their client's legal claims or to abide by basic rules of

(Resp. Br. at 22)(emphasis in original).

A Shoc's defiant refusal to draw a distinction between attorney and client fails to comport with the law and this Court's precedent that requires a finding of bad faith by the attorney (as opposed to bad faith by the client) before the Court imposes sanctions under § 1983. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006)(An attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'"); *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001), *amended on reh'g,* 311 F.3d 1077 (11th Cir. 2002) (For sanctions under section 1927 to be appropriate, "[s]omething more than a lack of merit is required or they would be due in every case."); *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997)(The imposition of sanctions pursuant to §1927 requires a finding that (1) counsel engaged in unreasonable and vexatious conduct, (2) that this conduct multiplied the proceedings, and (3) that the amount of sanction bears a financial nexus to the cost associated with the excess proceedings.).

A Shoc's attempt to support its assertion that lawyer and client are

---

discovery. DE 66 at 4-7." (Resp. Br. at 22). Notably, A Shoc never raised claims of counsel's bad faith as to any of the papers cited pursuant to Rule 11. If A Shoc believed that the complaint was evidence of counsel's bad faith, A Shoc should have raised Rule 11 in response, but did not.

irrevocably joined at the hip fails too. A Shoc cites *Oliva v. NBTY, Inc.*, 583 F. App'x 877, 881 (11th Cir. 2014). *Olivia* was a products liability case where the attorney, independent of the client, "either knowingly or recklessly made false representations in his motion," filed a motion the court characterized as frivolous which characterization the attorney never challenged, and "fil[ed] a frivolous motion based on statements that he knew or should have known (by checking his own records) were false, he obstructed the litigation and grossly deviated from the conduct of a reasonable attorney."[14] *Oliva,* 583 F. App'x at 881.

*Frey v. Town of Jackson*, 41 F.4th 1223 (10th Cir. 2022), cited by A Shoc, is also inapposite. In *Frey*, a civil rights case stemming from an alleged unlawful arrest, plaintiff's counsel repeatedly filed amended complaint after amended complaint raising frivolous constitutional claims that the district court found were "egregious enough to warrant an award of attorney's fees." *Frey,* 41 F.4th at 1244.

Both *Olivia* and *Frey* obviously involved claims asserted for individual unsophisticated plaintiffs represented by counsel in federal court. Contrast those plaintiffs with Celsius, a large publicly traded entity worth billions of dollars with enough business to interest the SEC in performing an investigation, and enough

---

[14] The report and recommendation of the Magistrate Judge in *Olivia* that was affirmed shows that the attorney's conduct was considered separately from the attorneys' client there and not lumped together with the client like the court did below. See *Oliva v. NBTY, Inc.*, No. 11-80850-CIV, 2014 U.S. Dist. LEXIS 193390 (S.D. Fla. Apr. 28, 2014).

resources to spend millions of dollars on clinical studies to support the structure/function claims made for its dietary supplement products. It would be obvious to a court examining the circumstances in *Olivia* and *Frey* that the plaintiffs' lawyers in those cases were calling the shots. It is a different situation altogether to make the same assumption—without the benefit of a hearing and fact finding as required—in this case. Celsius is a sophisticated client with in-house lawyers and outside counsel. Celsius' decisions cannot be automatically imputed to outside counsel in federal trademark infringement litigation.

### 3. None of A Shoc's Legal Authorities Provide any Support for the Unprecedented Sanctions Imposed by the District Court Below on Former Counsel Whose Only Iniquity was that they Represented A Shoc's Competitor Celsius.

A Shoc's argument that "[c]ourts routinely sanction attorneys for engaging in similar conduct" (with citations to authorities) (Resp. Br. at 26), would be a valid argument if former counsel actually engaged in any of the conduct alleged, but none of it is true, and none of it was determined based on any fact finding by the district court. Even if the district court had engaged in fact finding and found that any of the conduct alleged by A Shoc was actually committed, none of the conduct was committed by former counsel, it was all Celsius' conduct, as compared to the sanctionable conduct by counsel referenced in the authorities cited by A Shoc. (Resp. Br. at 26).

None of the cases cited by A Shoc are analogous or in any way "similar" to

this one.[15] In *Eldredge v. EDCare Mgmt.*, counsel in an FLSA case was sanctioned *after* fact finding and credibility determinations by the magistrate judge that, *inter alia*, counsel refused to turn over plaintiff's corporate laptop belonging to the defendant despite numerous demands for the return of the defendant's property thereby creating an unfair advantage for the plaintiff "and vitiating the entire Eldredge litigation." 766 F. App'x 901, 908 (11th Cir. 2019).

In *Young Apartments, Inc. v. Town of Jupiter*, another civil rights case, § 1927 fees were awarded specifically for the period after this Court's decision in *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027 (11th Cir. 2008), which remanded the case but in the process determined that several of plaintiff's theories of recovery were either not viable or required evidence that plaintiff plainly did not possess. *Young Apartments, Inc. v. Town of Jupiter*, 503 F. App'x 711, 716 (11th Cir. 2013). After the litigation that followed remand, this Court affirmed the sanctions award for the period after remand because plaintiff's counsel continued to pursue claims that counsel was already told by this Court were baseless, and because counsel defaulted in response to the motion for fees. *Young Apartments,* 503 F. App'x at 715-6.

---

[15] A Shoc cited to *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2006), but that case reversed a sanctions award under § 1927 for absence of evidence of sanctionable conduct by counsel. A Shoc also cited to *Frey,* a civil rights case discussed above that is also inapplicable.

In *Apex Oil Co. v. Belcher Co. of N.Y.*, a Second Circuit case A Shoc cited for the proposition that "courts regularly impose sanctions under Section 1927 for multiplying proceedings during discovery" (Resp. Br. at 28), the district court examined the entire record and found that in response to "reasonable requests for admissions, document production, and the identification" of an expert, plaintiff's "counsel attempted to resolve the matter informally" pursuant to the local rules, was told in each case "to make a motion," and in each case after the motion was made, "defense counsel 'mysteriously,' in the district court's words, complied with the requests." 855 F.2d 1009, 1020 (2d Cir. 1988).

*Apex* is not this case. Celsius objected to A Shoc's requests. The parties met and conferred on Celsius' objections. Celsius amended its responses several times as a result. A Shoc then moved to compel. A Shoc's motions to compel were never decided. It was pure speculation for the district court—after skimming through a mere handful of objections to A Shoc's hundreds of requests to produce and admit—to conclude that Celsius' objections were improper.

### 4. The District Court's Sanction Award was Untethered from Any Alleged Vexatious Conduct

A Shoc asserts—citing no record evidence and relying only on the district court's decision on appeal for authority—that the district court did not abuse its discretion when it failed to find a causal connection between the alleged

objectionable conduct of counsel and multiplication of the proceedings[16]. None of the fees or costs awarded bore any relationship to former counsel's alleged conduct. In response, A Shoc failed to show any such relationship, pointing out only that the district court awarded all the fees incurred after A Shoc moved to dismiss. (Resp. Br. at 30). According to A Shoc, § 1927 is a catch all provision that captures and compensates defendants for all of plaintiff's counsel's objectionable conduct after the dismissal stage.

A Shoc's position does not hold water. Section 1927 is not a "catch-all" provision. *Amlong & Amlong,* 500 F.3d at 1242. "[T]he dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Peterson,* 124 F.3d at 1396 quoting 28 U.S.C. § 1927. The failure to justify the amount awarded renders the award arbitrary. *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985) (district court's failure to place on the record evidence sufficient to explain how it arrived at the sanction imposed reflective of the costs entailed by the attorneys' misconduct rendered it arbitrary, based on unsupported assumptions, and subject to reversal).

---

[16] A Shoc's argument that its motion was a motion for attorneys' fees subject to local rule 7.3(b) and Appellants waived the lack of causal connection argument (Resp. Br. at 32) should also dictate that the motion should have been denied because it was not verified as required by the rule.

### III.   <u>CONCLUSION</u>

The district court's order should be reversed, vacated, and the sanction against counsel expunged, with costs.

Dated: March 31, 2023

Respectfully submitted,

**KAUFMAN DOLOWICH & VOLUCK, LLP**

*/s/ Avery A. Dial, Esq.*
**Avery A. Dial, Esq.**
Florida Bar No.: 732036
Email: adial@kdvlaw.com
**Barbara R. Schabert, Esq.**
Florida Bar No.: 121421
Email: bschabert@kdvlaw.com
100 SE 3rd Avenue, Suite 1500
Fort Lauderdale, Florida 33394
Telephone: (954) 302-2360
Facsimile: (888) 464-7982
*Counsel for Defendants, Joel B. Rothman,*
*Craig A. Wirth and SRIPLAW, P.A.*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.    This document complies with the word limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 6496 words.

2.    This document complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word v. 2208 with Times New Roman size 14.

<u><em>/s/ Avery A. Dial, Esq.</em></u>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

<u>/s/ Avery A. Dial, Esq.</u>
4894-6898-2362, v. 1